414 So.2d 680 (1982)
STATE of Louisiana
v.
Dale Ralph ALBERT.
No. 81-KA-0279.
Supreme Court of Louisiana.
May 17, 1982.
Rehearing Denied June 18, 1982.
*681 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Norval Rhodes, Dist. Atty., Glynn Voisin, Asst. Dist. Atty., for plaintiff-appellee.
Charles Gary Blaize, Houma, Larry P. Boudreaux, Thibodaux, for defendant-appellant.
DENNIS, Justice.[*]
Defendant, Dale Ralph Albert, Jr., was charged by a Terrebonne Parish grand jury with first degree murder, La.R.S. 14:30. On July 1, 1980, he was convicted by a twelve-person jury which found him guilty of the lesser included offense of second degree murder. He was sentenced to serve life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence. Defendant now appeals on the basis of sixteen arguments.
At approximately six o'clock p. m. Friday, December 21, 1979, a shooting occurred at the Hi-Lo Lounge located on Highway 20 in Terrebonne Parish. As a result of the shooting, Tommy Tharpe, age 26, died, and Thomas Burke, age 27, was injured losing a portion of his middle and ring finger of his right hand.
Tharpe and Burke stopped at the lounge after work on December 21, 1979. Burke went directly into the lounge while Tharpe, the deceased, went around the side of the building to see a motorcycle parked there. Two shots were heard by Burke, other patrons, and the employees of the lounge. Tharpe entered the lounge holding his chest and fell to the floor. The defendant, Dale Albert, entered the lounge holding a revolver. Burke ran to the men's room and held *682 the door shut with his body. Other patrons of the lounge and employees sought cover as well. Albert kicked at the men's room door trying to open it. During his second attempt to open the door, the defendant fired a shot through the door striking Burke in his right hand. Burke left the men's room complaining that his finger had been shot off. The defendant forced Burke to lie on the floor next to the mortally wounded Tharpe. During this time, Bruce Verdin, the manager of the lounge, attempted to phone the police twice, but the defendant pointed the weapon at him prompting Verdin to put the phone down on both occasions. An employee of the lounge, Sheila Martin, escaped from the building and phoned the police from a nearby grocery store. The defendant was arrested at the scene.
Only three of the defendant's specifications of error present legal issues of some novelty:

SPECIFICATION OF ERROR II

(Assignment No. 9)
By this assignment defendant argues that the trial court committed reversible error by its failure to sustain a challenge for cause. After examining Mr. White, a prospective juror, the defense counsel challenged him for cause on the basis of his statements which indicated that he might be influenced by the fact that his brother had been killed during the commission of a crime thirteen years before and that he would automatically vote to recommend the death penalty in the event of a conviction. This was sufficient for a prima facie showing under La.C.Cr.P. art. 797(2) and (4) which requires the trial court to sustain a challenge for cause when the juror is not impartial, whatever the cause of his partiality or when the juror will not accept the law as given to him by the court. The defendant need only show two things to obtain reversible error: (1) that the trial judge erred in refusing to sustain a challenge for cause by the defendant, and (2) that the defendant exhausted all of his peremptory challenges, as he did in this case. E.g., State v. Monroe, 366 So.2d 1345 (La. 1978). Before the court ruled on the challenge, however, Mr. White was examined by the assistant district attorney and stated that he would apply the law as given to him by the court; that he would follow what the judge told him even if there were a conviction; and that he would follow the guidelines included in the judge's instructions in determining a sentence. The defense counsel did not examine Mr. White further.
Although a trial court should sustain a challenge for cause despite a prospective juror's professed impartiality if his answers reveal facts from which bias, prejudice or inability to follow the law may be reasonably implied cf. State v. Lewis, 391 So.2d 1156 (La.1980); State v. Monroe, supra, we do not think the trial judge erred in finding that any such implication was dispelled in Mr. White's case by his total performance during his examination. Mr. White, a retired schoolteacher who had taught in the parish for twenty-one years was very candid and conscientious throughout his examination, revealing that he had once or twice consulted the district attorney on a minor civil business matter and that he was related by marriage to another prospective juror who was excused by consent of both sides. After carefully examining Mr. White's testimony, we cannot say the trial judge was wrong in believing that he could be impartial and would follow the law despite his initial answers which caused the alert defense counsel to challenge him for cause.
This specification is without merit.

SPECIFICATION NO. VII

(Assignment No. 31)
Defense counsel argues that the trial judge erred in sustaining the prosecutor's objection to a question put to Mr. Verdin, a state's witness, on cross examination: "Q. Mr. Verdin isn't it true that you would like to see Mr. Albert convicted of this charge?" He contends he should have been allowed to ask the question in order to show bias.
La.R.S. 15:492 provides:

*683 "When the purpose is to show that in the special case on trial the witness is biased, has an interest, or has been corrupted, it is competent to question him as to any particular fact showing or tending to show such bias, interest or corruption, and unless he distinctly admit such fact, any other witness may be examined to establish the same."
This statute recognizes the generally accepted proposition that partiality, or any acts, relationships or motives reasonably likely to produce it, may be proved to impeach credibility; and that there are an infinite variety of the kinds and sources of partiality. See McCormick, Evidence, § 40 (2d ed. 1972). However, La.R.S. 15:492, also seems to adopt the view of many courts that when the main circumstances from which the bias proceeds have been proven, the trial judge has discretion to determine how far the details, whether on cross examination or by other witnesses, may be allowed to be brought out. See McCormick, Id. at n. 21 and cases cited.
Before the question at issue was asked, Mr. Verdin had testified fully to facts indicating that he was certain the defendant had committed a brutal murder. He recounted that, after he heard gunshots outside, the defendant, with a revolver in his hand, followed the staggering victim inside, kicked him and banged his head on the floor after he collapsed, and ordered Mr. Verdin at gunpoint to desist in his efforts to call an ambulance as the victim bled profusely on the floor. If Mr. Verdin's certainty that the defendant had committed outrageous criminal acts can be called bias or partiality, the main circumstances from which it proceeded were well proven. We cannot say the trial judge denied the defense a reasonable opportunity to prove the bias of the witness or misused his discretion in determining how far the details would be allowed to be brought out.
This specification is without merit.

SPECIFICATION OF ERROR NO. XI

(Assignments Nos. 21-23)
By this specification the defendant argues that the trial court erred in refusing him the right to use the written statements of state witnesses, Bruce Verdin and Sheila Martin, to impeach their testimony at trial.
We frankly do not understand appellate defense counsel's complaint with regard to the Bruce Verdin statements. The trial transcript at pages 889, et seq., indicates that defendant's trial counsel wished to show that on several occasions before trial Verdin had said that the defendant had fired more than one shot into the bathroom at Burke, rather than a single shot as he had testified on direct examination. The transcript at pages 899-900 further shows that defense counsel was given a copy of one such statement and used it to refresh the witness's memory. Moreover, the record at 901-904 reflects that in response to defense counsel's further cross examination, Verdin distinctly admitted that on three occasions before trial he had stated, contrary to his trial testimony, that the defendant had fired more than one shot into the bathroom. The evidence that a witness made a prior inconsistent statement is not admissible until he fails to distinctly admit making such a statement after a proper foundation for impeachment has been laid. La.R.S. 15:493. Defendant's trial counsel obtained everything from the witness to which his client was entitled by law in the way of impeachmentdistinct admissions to prior inconsistent statements. Unless we have misread the argument, this assignment is totally without merit.
Before trial, the defendant's attorney interviewed prosecution witness Sheila Martin pursuant to the trial court's order that she be made available for this purpose. During the trial, however, the court ruled that defense counsel could not use any statement he elicited from her in the pretrial conversation because she had been under the mistaken impression that the court had ordered her to give him a statement in addition to merely listening to his questions. The defense counsel objected to the trial judge's ruling, and after completing his cross examination of Mrs. Martin, he renewed *684 his objection and made a proffer of his handwritten notes of the interview to show the importance of her statements and the prejudicial effect of the judge's ruling. Defendant's appellate counsel assigns as error the trial court's refusal to allow the statements to be used for impeachment.
Although the trial judge's ruling was questionable, we need not resolve the basic question presented by his suppression order. We have reviewed the trial defense counsel's proffered notes and find that Mrs. Martin testified at trial consistently with virtually all of the information contained in them. The lawyer's notes indicated she made one prior inconsistent statement: Before trial she said she had heard of the victim Tharp before the shooting and thought he was the type of person she would be afraid of. At trial she testified she did not remember whether she had heard of Tharp before the shooting. In the context of this case, however, we do not think the defendant's inability to use the statement as impeachment material could have possibly contributed to the conviction. Her statement was brief and totalling lacking in any specifics as to why Tharp had a bad reputation. The defendant took the stand and gave extensive detailed testimony as to Tharp's violent nature and bad character.
The remaining specifications of error have no merit and raise no new issues of law. For the benefit of the parties, we will discuss them in an unpublished appendix to this opinion. Because none of the specifications of error discussed above or in the appendix have merit, we affirm the conviction and sentence of defendant.
AFFIRMED.
SHORTESS, J. Ad Hoc, dissents with reasons.
MELVIN A. SHORTESS, Justice Ad Hoc, dissenting.
I respectfully dissent.
The prospective juror Royal White stated on voir dire that he would automatically impose the death penalty if the defendant was convicted of first degree murder. White revealed that his brother had been killed some twelve to thirteen years earlier, during the commission of a crime, and he felt justice had not been done because the murderer was convicted of a lesser included offense and received a light sentence. No amount of subsequent instruction or inquiry, in my opinion, could rehabilitate Royal White. He should have been discharged for cause. State v. Lewis, 391 So.2d 1156 (La.1980).
NOTES
[*] Judges Melvin A. Shortess, Burrell J. Carter and Felix H. Savoie, Jr. of the Court of Appeal, First Circuit, participated in this decision as Associate Justices pro tempore, joined by Associate Justices Dennis, Blanche, Watson and Lemmon.