513 So.2d 849 (1987)
STATE of Louisiana, Appellee,
v.
Warner WILEY, Appellant.
No. 18944-KA.
Court of Appeal of Louisiana, Second Circuit.
September 23, 1987.
*853 Donnie Ellerman, Dennis Grady Stewart, Winnsboro, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, William R. Coenen, Jr., Dist. Atty., Rayville, E. Rudolph McIntyre, Jr., Asst. Dist. Atty., Winnsboro, for appellee.
Before HALL, C.J., and MARVIN and FRED W. JONES, Jr., JJ.
HALL, Chief Judge.
Defendant, Warner Wiley, a man in his early twenties, was convicted by a jury of first degree murder in violation of LSA-R.S. 14:30. He was sentenced to life imprisonment without benefit of parole, probation or suspension of sentence. His appeal presents twenty-five assignments of error. Finding no merit to these assignments, we affirm.
FACTS
In the late evening hours of November 20, 1983, Mrs. Myrla Massey, a woman in her mid to late seventies, was attacked in the bedroom of her home in Winnsboro, Louisiana. She was repeatedly beaten about the head with a long piece of wood or metal such as an angle iron or an ax handle. A similar type of instrument was used to severely lacerate her vagina, tearing the vaginal wall and puncturing the bladder. Sperm was found in Mrs. Massey's vagina and the condition of her rectum indicated that it had been penetrated by a softer object such as a penis.
The state's forensic pathology expert testified that extensive force was used in delivering the blows to Mrs. Massey's head, causing two skull fractures, but that she did not die instantly. He testified that she was alive when her vagina was lacerated with the blunt instrument and when her rectum was penetrated. He stated that there was no way to determine if she was alive when the sperm was deposited in her vagina.
Mrs. Massey's body was found the following morning by her eighty-three year old husband. Her night gown was pushed up around her breasts and blood had issued from her ears, nose, mouth, vagina and rectum.
Mr. Massey was present in a separate bedroom in the home when the attack on his wife occurred. He was unable to hear any disturbance as he is deaf and did not own a hearing aid at the time.
Two identifiable fingerprints were found at the scene and later compared with the defendant's fingerprints. The state's fingerprint comparison expert testified that eight to nine points are required to make a positive identification of a fingerprint. She found eleven positive points on each of the two fingerprints matching the defendant's fingerprints. Head and pubic hair of a black person recovered from the bed sheets and Mrs. Massey's body had characteristics similar to samples taken from the defendant, according to the state's hair comparison expert. Analysis of the seminal fluid found in Mrs. Massey's vagina and on newspaper at the scene revealed that it was type A. The defendant was determined to be a type A secretor. A secretor is a person who secretes his blood group typing into his body fluids. The state's expert in body fluid analysis testified that the seminal fluid found at the scene could have been deposited by the defendant.
ASSIGNMENTS OF ERROR NOS. 1, 4 and 21
Inculpatory Statements
By these assignments, defendant argues that the trial court erred in allowing the state to introduce into evidence various inculpatory statements alleged to have been made by the defendant. The defendant filed a motion to suppress the first three statements and objected to the fourth when it was introduced at trial.
The first statement was made on November 28, 1983. The defendant was being transported from Winnsboro to the *854 West Carroll Parish Sheriff's Office in Oak Grove, Louisiana by State Troopers James C. McKenzie and Stanley Martin. Trooper McKenzie testified that the defendant spontaneously stated that he wanted to jump out of the car and kill himself. The defendant argues that this statement is irrelevant.
Evidence is relevant if it makes any fact indicating guilt or innocence more or less probable. Absent a clear abuse of discretion, the trial court's ruling as to the relevancy of evidence should not be disturbed on appeal. State v. Whittaker 463 So.2d 1270 (La.1985); State v. Johnson, 453 So.2d 279 (La.App. 2d Cir.1984).
The trial judge ruled that the statement was admissible. The statement was relevant to the state of mind of the defendant at the time of his arrest, to be accorded such weight and effect on the issue of guilt or innocence as the jury might give it. We find no abuse of discretion.
The defendant made another statement on November 28, 1983, this time to Deputy Harry B. Keffer of the West Carroll Parish Sheriff's Office. Deputy Keffer was in the radio room when he was alerted that defendant had stated that he was going to hang himself in his cell. He went to the defendant's cell and inquired as to what the problem was and the defendant repeated that he wanted to kill himself. Deputy Keffer then inquired why the defendant would want to do a stupid thing like that and the defendant responded "because I killed that woman, they're gonna to pin it on me and I got nothing to lose for it."
Defendant argues that this statement was not admissible for several reasons. He argues that no Miranda warnings were given, that the defendant was in a confused mental state, that no attorney had been appointed, and that the statement was uncorroborated, unrecorded and contradictory.
Spontaneous, voluntary statements of a person in custody, not given as a result of police interrogation or compelling influence, are admissible in evidence without Miranda warnings. State v. Smith, 407 So.2d 652 (La.1981); State v. Johnson, 457 So.2d 732 (La.App. 2d Cir.1984) writ denied 460 So.2d 608 (1984).
Deputy Keffer testified that he knew nothing about the case and was merely seeking to investigate a disturbance in the jail. The conversation between Deputy Keffer and the defendant did not constitute custodial interrogation in violation of Miranda. Furthermore, defendant was given Miranda warnings the morning before this statement was made.
Emotional distress is not grounds for rendering a confession inadmissible unless it is so severe that the party confessing is unable to voluntarily do so. State v. Beck, 445 So.2d 470 (La.App. 2d Cir.1984) writ denied, 446 So.2d 315 (La.1984).
No evidence was presented by the defendant at the hearing on the motion to suppress or at the trial to corroborate his alleged mental confusion. Deputy Keffer testified that defendant was calm, not crying or "hyper", and did not seem to be upset. We find this contention to be without merit.
On November 29, 1983, at the West Carroll Parish Sheriff's office, State Troopers McKenzie and David Rushing conducted a four hour interview of the defendant in an effort to obtain a confession. No confession was forthcoming and the interview was not taped. At trial Trooper McKenzie testified as to the content of notes he took of defendant's responses relating to the case. He testified that the defendant said that if the fingerprints proved he had done it, then he "ought to be punished"; that if he did it, to tell the family he was sorry; and in reference to the murder weapon, that "you can't find it".
The defendant argues that he was entitled to have the entirety of the statement presented to the jury.
LSA-R.S. 15:450 provides that:
"Every confession, admission or declaration sought to be used against anyone must be used in its entirety, so that the person to be affected thereby may have the benefit of any exculpation that the whole statement may afford."
*855 The fact that the purported statement of the accused does not consist of a verbatim reiteration of the conversation between them, due to the witness's inability to recall or other valid explanation, does not violate the rights of the accused under Section 450. All that the law requires is that the substance of the confession or statement be given. State v. Marmillion, 339 So.2d 788 (La.1976); State v. Domino, 234 La. 950, 102 So.2d 227 (1958).
Trooper McKenzie testified that pre-confession statements are not tape-recorded due to the cost factor and secretarial limitations. He further testified that much of the conversation occurring during the interview did not relate to the instant offense.
The mere fact that exculpatory statements may "possibly" have been made will not suffice to warrant excluding the evidence of the confession or inculpatory statement in the absence of a showing of prejudice resulting from the officer's inability to recall "everything" that was said. State v. Sepulvado, 342 So.2d 630 (La.1977). We find that these statements were properly admitted.
The fourth statement was made to Winnsboro Police Officer Mitch Reynolds. It occurred in the middle of the night on June 15, 1985 while Reynolds was delivering a prisoner he had arrested to the Franklin Parish Jail. Officer Reynolds testified that the defendant said, "When I get out of here, I'll kill your momma next."
At trial defense counsel objected to the statement as being irrelevant. On appeal defendant only argues that the state did not show that the confession was obtained freely and voluntarily and that no Miranda warnings were given. Defendant argues that allowing this statement into evidence without a foundation was reversible error. The admissibility of a custodial and spontaneous confession has already been discussed. The record reflects that Officer Reynolds did not go to the jail to interrogate the defendant, that he did not provoke the conversation, nor did he promise or threaten the defendant in order to get a statement. The statement made by the defendant was spontaneous, voluntary and was not elicited by police interrogation and is therefore admissible.
These assignments are without merit.
ASSIGNMENTS OF ERROR NOS. 2, 3, 17 and 18
Photographs of Victim and Crime Scene
By these assignments defendant questions the admission into evidence of various photographic exhibits depicting the victim and the crime scene.
First, defendant contends that photographs S-3 through S-16 were introduced without a proper foundation because they were not identified prior to admission by the person who took them.
It is a well-settled rule that a photograph need not be identified by the person who took it to be admissible in evidence. It suffices if it is shown to have been accurately taken and to be a correct representation of the subject in controversy. State v. Robertson, 358 So.2d 931 (La.1978). A proper foundation for admission into evidence of a photograph is laid when a witness having personal knowledge of the subject depicted by the photograph identifies it. Sufficiency of identification rests largely within the discretion of the trial judge. State v. Lewis, 478 So.2d 665 (La.App. 2d Cir.1985).
In this case the photographs of the crime scene were identified by Deputy Steve Plyant, the first law enforcement officer to arrive at the scene. He testified that photographs S-3 through S-17 accurately represented the crime scene on the day Mrs. Massey's body was found. Additionally, we note that subsequent to the photographs being admitted, they were again identified by Franklin Parish Coroner Dr. Hollis T. Rogers, who pronounced Mrs. Massey dead at the scene, and by the photographer, State Trooper Don French. Under the circumstances, we find no abuse of discretion.
Next, the defendant contends that the color photographs marked M-1 through M-21 and S-28 through S-35 were gruesome, repetitive, lacking in probative value *856 and served to "arouse the passion of the jury" against the defendant.
In general, photographs are admissible if they illustrate any fact, shed any light upon an issue in the case, or are relevant to describe the person, thing or place depicted. State v. Landry, 388 So.2d 699 (La.1980); State v. Hardeman, 467 So.2d 1163 (La.App. 2d Cir.1985). In particular, gruesome photographs are admissible if they are relevant and their probative value outweighs their prejudicial effect. State v. Lindsey, 404 So.2d 466 (La.1981); State v. Williams, 497 So.2d 333 (La.App. 2d Cir.1986) writ denied 499 So.2d 81 (1987). A balance must be struck between the photograph's probative value and its tendency to overwhelm reason and to associate the accused with the atrocity without sufficient evidence. State v. Kelly, 362 So.2d 1071 (La.1978).
The trial court noted that photographs M-1 through M-21 were necessary to show identification of the victim, location of the body, manner of death, and specific intent of the defendant to kill the victim, to collaborate other evidence establishing the cause of death, and to describe the severity of the wounds and the probable manner in which the wounds were inflicted. It found that the probative value of the photographs far exceeded any prejudicial or inflammatory effect.
Photographs S-78 through S-35 were taken at the autopsy and were used at trial by the state's forensic pathologist expert in explaining the nature of the head and facial injuries suffered by Mrs. Massey. The exact nature of Mrs. Massey's injuries were not apparent in the photographs taken at the crime scene as they were obscured by large quantities of blood.
A videotape recording of the crime scene was admitted at trial over defendant's objection that it was cumulative and therefore of slight probative value.
The admissibility of videotapes are governed by the same rules as still photographs. State v. Burdgess, 434 So.2d 1062 (La.1983); State v. Morris, 457 So.2d 119 (La.App. 2d Cir.1984). A review of the videotape showed that it contained additional evidence not revealed by the still photographs and therefore had significant probative value.
The trial court has considerable discretion in admitting photographs and its ruling will not be disturbed on appeal in the absence of an abuse of that discretion. State v. Kelly, supra; State v. Johnson, 453 So.2d 279 (La.App. 2d Cir.1984). A careful review of all the photographs and the videotape reveals that, while they were gruesome, any prejudicial effect was far outweighed by their significant probative value.
This assignment lacks merit.
ASSIGNMENT OF ERROR NO. 5
Sequestration of Witnesses
By this assignment, defendant contends that the trial court erred in refusing his request that the state's witnesses be placed under the rule of sequestration at the commencement of trial.
LSA-C.Cr.P. Art. 764 provides:
A. Upon its own motion the court may, and upon request of the state or the defendant the court shall, order that the witnesses be excluded from the courtroom or from where they can see or hear the proceedings and refrain from discussing the facts of the case or the testimony of any witnesses with anyone other than the district attorney or defense counsel. The court may modify its order in the interest of justice.
B. This Article shall authorize the exclusion of all witnesses except the defendant and one officer or employee of the state who is designated as its representative for the entire trial by the district attorney. This officer or employee of the state shall refrain from discussing the facts of the case or the testimony of any witness with anyone other than the district attorney or defense counsel. Amended by Acts 1986, No. 968 § 1.

At the outset of the voir dire examination, defense counsel requested the sequestration of all witnesses. The trial judge replied "okay", but later stated that he was going to hold each side responsible for any *857 witnesses that might come into the courtroom but that he was "not interested in sequestering any witnesses" until the trial started. No order of sequestration was rendered.
Apparently, the trial judge was of the opinion that LSA-C.Cr.P. Art. 764 does not apply during voir dire. This is not correct. Sequestration is available during voir dire and the language of Article 764 is mandatory. State v. Johnson, 438 So.2d 1091 (La.1983).
When the defendant in the present case requested that the witnesses be sequestered during the voir dire examination, the trial judge had no choice but to grant the sequestration order. However, this error does not automatically call for the reversal of defendant's conviction. The purpose of sequestration is to prevent witnesses from being influenced by prior testimony and to strengthen the role of cross-examination in developing the facts. Where the purpose of sequestration is not thwarted by the presence of witnesses during voir dire, and where defendant cannot be shown to have been materially prejudiced thereby, the refusal of the trial court to order sequestration may be considered harmless error. State v. Johnson, supra.
Defendant argues that he was prejudiced because he was denied the advantage of knowing who the state's witnesses were, could not identify the state's witnesses, and could not confer with the defense witnesses during voir dire. None of these complaints of prejudice relate to the purpose of sequestration.
In the present case, defendant has not shown that any of the state's witnesses entered the courtroom during voir dire. Since the defendant has not demonstrated that any prejudice resulted to him from the trial court's ruling we find that the refusal of the trial court to order sequestration during voir dire was harmless error. State v. Johnson, supra; State v. Williams, 346 So.2d 181 (La.1977).
ASSIGNMENT OF ERROR NO. 6
Jury Selection-Removal of Sworn Juror
By this assignment of error, defendant claims the trial court erred in excusing juror Esther S. Sistrunk after she had been accepted by both the state and the defendant and sworn but before jury selection was concluded.
LSA-C.Cr.P. Art. 796 provides:
If it is discovered after a juror has been accepted and sworn, that he is incompetent to serve, the court may, at any time before the first witness is sworn, order the juror removed and the panel completed in the ordinary course.
Defendant contends that Mrs. Sistrunk was competent to serve as a juror and therefore should not have been excused.
Mrs. Sistrunk was the fifth prospective juror questioned before the panel was completed. During her examination, Mrs. Sistrunk testified that she had two children, a girl age 13 and a boy age 18. At no time during her examination was she asked if serving on the jury would create any hardship on her or her family. Immediately after being sworn, Mrs. Sistrunk alerted the court that there was no one available to care for her children during the trial.
Further questioning by the court and counsel revealed that the Sistrunk family lived 13 miles out of town, that Mr. Sistrunk worked offshore and was not home at that time, and that the eldest child had a job after school which prevented him from being present to supervise the younger child. Mrs. Sistrunk expressed considerable anxiety about leaving the children unsupervised and answered affirmatively when asked if this might hinder her thinking in the courtroom. Consequently, the trial judge, over the objection of defense counsel, excused Mrs. Sistrunk and continued with the voir dire of other prospective jurors until the panel was completed in the ordinary course.
Our inquiry is whether the trial court abused its discretion in determining that the anxiety created in Mrs. Sistrunk by her inability to fulfill her family responsibilities and her fear for the safety of her children *858 rendered her incompetent to discharge the duties incumbent upon a juror in a first degree murder trial.
While the authority to remove a sworn juror should be exercised cautiously, in this case where additional information concerning the juror was brought to the court's attention immediately after the juror was sworn early in the jury selection process, the court's discretion was properly exercised in removing the juror who clearly could not devote her full attention to the matters at hand and whose reasoning and decision-making ability in all probability would have been impaired by her natural concern for her children.
We conclude that the record supports the trial court's determination that Mrs. Sistrunk was incompetent to serve as a juror within the meaning of Art. 796. This assignment of error is without merit.
ASSIGNMENTS OF ERROR NOS. 7, 11, 12, 13 & 14
Jury Selection-Opposition to Capital Punishment
By these assignments, defendant contends that the trial court erred in excusing for cause, on the basis of their attitude toward the death penalty, prospective jurors Chester Cain, James Anderson, Charles W. Anderson, Mary Hollins and Patsy Dean Ricks.
These prospective jurors were excused under LSA-C.Cr.P. Art. 798 which provides in pertinent part:
"It is good cause for challenge on the part of the state, but not on the part of the defendant, that:
(2) The juror tendered in a capital case who has conscientious scruples against the infliction of capital punishment and makes it unmistakably clear (a) that he would automatically vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before him, or (b) that his attitude toward the death penalty would prevent him from making an impartial decision as to the defendant's guilt."
As to prospective jurors Chester Cain, James Anderson, Charles W. Anderson and Patsy Dean Ricks, defendant argues that excusing jurors who expressed inalterable opposition to capital punishment renders the jury "death qualified". He contends that such a jury is substantially more likely to convict than a jury which includes opponents of capital punishment.
Defendant's argument is foreclosed by Lockhart v. McCree, 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986). In that case, the United States Supreme Court held that the removal for cause, prior to the guilt phase of a bifurcated capital trial, of prospective jurors strongly opposed to the death penalty does not violate either the fair-cross section requirement or the impartial jury requirement of the 6th and 14th amendments of the U.S. Constitution. See also State v. Clark, 492 So.2d 862 (La.1986) and State v. Bates, 495 So.2d 1262 (La.1986).
Defendant also contends that it was improper to exclude potential juror Mary Hollins since she indicated that she could vote for the death penalty. We disagree. Although on one occasion, in response to a question by defense counsel, Ms. Hollins agreed that she could imagine a circumstance cruel enough where she might impose the death penalty, on numerous other occasions she stated that she could not vote for the death penalty and when questioned by the trial judge replied, "I can't I can't". We find that Ms. Hollins was properly excused for cause under Art. 798.
These assignments of error are without merit.
ASSIGNMENTS OF ERROR NOS. 8, 9 and 10
Jury Selection-Challenges for Cause
By these assignments, defendant contends that the trial court erred in denying his challenges for cause of three prospective jurors.
LSA C.Cr.P. Art. 797 provides in pertinent part:

*859 The state or the defendant may challenge a juror for cause on the ground that:
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence; ...
(4) The juror will not accept the law as given to him by the court; ...
A trial court is vested with broad discretion in ruling on a challenge for cause. That ruling will not be disturbed on appeal unless the trial court has abused its discretion. In determining whether the trial court acted arbitrarily and unreasonably it is essential that the entire voir dire examination of the prospective juror be reviewed. State v. Bates, 397 So.2d 1331 (La.1981); State v. Brown, 444 So.2d 1346 (La.App. 2d Cir.1984) writ denied 449 So.2d 1343 (1984).
Defendant first argues that prospective juror Travis Cain's belief that the defendant should defend himself was sufficient grounds for a cause challenge. During voir dire, Mr. Cain initially indicated that he understood that he could not hold it against the defendant if he chose not to testify. Later, however, he stated "If he knows he's not guilty he'd be foolish not to get up and testify." When asked if he could set aside this belief, he replied, "Well, I guess". Despite this seeming reluctance to set aside his personal belief, Mr. Cain twice stated that he could accept the law if the judge instructed him that the defendant did not have to take the witness stand. The totality of the voir dire examination of Mr. Cain convinces us that there was no abuse of discretion by the trial court and no basis to sustain a challenge for cause.
Next, defendant argues that prospective juror Clarence Fontenot should have been excused for cause because of his predisposition toward the death penalty. Mr. Fontenot testified that while he could impose the death penalty, he disagreed with a sentence of life imprisonment. Later, however he testified that he would weigh the factors and would not automatically vote for the death penalty. When asked if he could accept the law he replied "I think so". He also stated, "I'd do my best and do what the judge says".
A challenge for cause is not warranted where a juror has volunteered an opinion seemingly prejudicial to the defense, but subsequently upon further inquiry or instruction by the court has demonstrated a willingness to decide the case impartially according to the law and evidence. Bates, supra. State v. Pettaway, 450 So.2d 1345 (La.App. 2d Cir.1984) writ denied 456 So.2d 171 (La.1984).
After carefully examining Mr. Fontenot's testimony, we cannot say the trial judge was wrong in believing that he was impartial and would follow the law despite his initial answers. See State v. Albert, 414 So.2d 680 (La.1982).
Next, defendant argues that family concerns prevented prospective juror Ellis Jackson from giving his undivided attention to the trial and that therefore the trial court should have granted his challenge for cause. Mr. Jackson testified that his wife did not like having to stay home by herself but that she was physically capable of caring for their children and did not work.
Mere inconvenience is not grounds for a challenge for cause. LSA-C.Cr.P. Art. 797. The trial court properly overruled defendant's challenge of this juror.
These assignments are without merit.
ASSIGNMENT OF ERROR NO. 15
Racial Make-up of Jury Venire
By this assignment defendant contends that the trial court erred in overruling his objection to the racial make-up of the general jury venire. Defendant is a member of the black race. His victim was white.
Defendant argues that a number of persons on the jury list were excused prior to trial. The record does not show the race of those excused persons. Eight prospective *860 jurors, five black and three white, were excused for lack of qualification. Of the 45 remaining prospective jurors, only six (or 13%) were black. Defendant argues, without support in the record, that 35% of the registered voters in Morehouse parish where the case was tried, after a change of venue, are black.
The proper procedural vehicle for challenging the constitution of a general or petit jury venire is the motion to quash. LSA-C.Cr.P. Art. 532(9). This motion must be made in writing, LSA-C.Cr.P. Art. 536, and must be filed before trial in conformity with LSA-C.Cr.P. Arts. 521, 535(C).
The official revision comment (c)(2) to Art. 535 provides:
"(2) The general venire or the petit jury venire was improperly drawn, selected, or constituted. This objection is waived unless it is urged before trial by a motion to quash the venire."
Defendant's failure to timely file such a motion constitutes waiver of the objection. State v. Durr, 343 So.2d 1004 (La.1977); State v. Jackson, 480 So.2d 937 (La.App. 2d Cir.1985) writ denied 484 So.2d 668 (La.1986).
In any event, defendant has failed to carry his burden of proving purposeful discrimination in the selection of the jury venire.
In Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed. 69 (1986) although the court dealt primarily with the issue of discrimination by the use of peremptory challenges, the court also summarized the standards for assessing a claim of racial discrimination in the selection of the jury venire. The burden is on the defendant who alleges discriminatory selection of the venire to prove the existence of purposeful discrimination. The court must consider such circumstantial and direct evidence of intent as may be available. Circumstantial evidence of invidious intent may include proof of disproportionate impact. Total or seriously disproportionate exclusion of blacks from jury venires is itself such an unequal application of the law as to show intentional discrimination. A prima facie case may be made out by showing that the totality of the relevant facts give rise to an inference of discriminating purpose. Once the defendant makes the requisite showing, the burden shifts to the state to explain adequately the racial exclusion.
The defendant initially must show that he is a member of a racial group capable of being singled out for differential treatment. In combination with that evidence, a defendant may then make a prima facie case by proving that in the particular jurisdiction members of his race have not been summoned for jury service over an extended period of time. Proof of systematic exclusion from the venire raises an inference of purposeful discrimination because the "result bespeaks discrimination".
In cases involving the venire, a prima facie case can be found on proof that members of defendant's race were substantially underrepresented on the venire and that the venire was selected under a practice providing the opportunity for discrimination. A defendant may make a prima facie showing of purposeful racial discrimination in the selection of the venire by relying solely on the facts concerning its selection in his case.
In the instant case, the defendant has made no showing as to the process for selecting the jury venire. There is no showing of racial implications in the excuses granted prior to or at trial. The only showing is that only 13% of the jury venire remaining after excuses were black. There is no showing in the record of the racial make-up of the parish where the trial took place. Accepting defendant's representation that blacks constitute 35% of the registered voters of the parish, the 13% black representation on the jury venire after excuses is not seriously or substantially disproportionate.
The defendant has failed to establish a prima facie case of purposeful discrimination in the selection of the jury venire by showing either systematic exclusion of blacks from the venire over a period of time or discriminatory practices or significant underrepresentation in this case.
This assignment lacks merit.
*861 ASSIGNMENT OF ERROR 16
Peremptory challenges of Black Prospective Jurors
In this assignment of error the defendant contends that the trial court erred in overruling defendant's objection to the systematic exclusion of blacks from the jury by the state. The defendant's argument is based solely upon the state's exercise of peremptory challenges to exclude three blacks from the jury. Defendant relies on Batson v. Kentucky, supra, which was decided several months prior to trial of this case. Batson held:
"These principles support our conclusion that a defendant may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial. To establish such a case, the defendant first must show that he is a member of a cognizable racial group. Castaneda v. Partida, supra, 430 U.S. [482] at 494, 97 S.Ct. [1272] at 1280 [51 L.Ed.2d 498 (1977) ], and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits `those to discriminate who are of a mind to discriminate.' Avery v. Georgia, supra, 345 U.S. [559] at 562, 73 S.Ct. [891] at 892 [97 L.Ed. 1244 (1953) ]. Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. This combination of factors in the empanelling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination.
In deciding whether the defendant has made the requisite showing, the trial court should consider all relevant circumstances. For example, a `pattern' of strikes against black jurors included in the particular venire might give rise to an inference of discrimination. Similarly, the prosecutor's questions and statements during voir dire examination and in exercising his challenges may support or refute an inference of discriminatory purpose. These examples are merely illustrative. We have confidence that trial judges, experienced in supervising voir dire, will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates a prima facie case of discrimination against black jurors.
Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors. Though this requirement imposes a limitation in some cases on the full peremptory character of the historic challenge, we emphasize that the prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause. See McCray v. Abrams, 750 F.2d [1113] at 1132 [(CA2 1984)]; Booker v. Jabe, 775 F.2d 762, 773 (CA6 1985), cert. granted [___ U.S. ___, 106 S.Ct. 3289, 92 L.Ed.2d 705 (1986) ]. But the prosecutor may not rebut the defendant's prima facie case of discrimination by stating merely that he challenged jurors of the defendant's race on the assumptionor his intuitive judgmentthat they would be partial to the defendant because of their shared race. Cf. Norris v. Alabama, 294 U.S. [587] at 598-599, 55 S.Ct. [579] at 583-84 [79 L.Ed. 1074 (1935)]; see Thompson v. United States, 469 U.S. 1024, 1024, 105 S.Ct. 443, 444, 83 L.Ed.2d 369 (BRENNAN, J., dissenting from denial of certiorari). Just as the Equal Protection Clause forbids the States to exclude black persons from the venire on the assumption that blacks as a group are unqualified to serve as jurors, supra, at 1717, so it forbids the States to strike black veniremen on the assumption that they will be biased in a particular case simply because the defendant is black. The core guarantee of equal protection, ensuring citizens that their State will not discriminate on account of race, *862 would be meaningless were we to approve the exclusion of jurors on the basis of such assumptions, which arise solely from the jurors' race. Nor may the prosecutor rebut the defendant's case merely by denying that he had a discriminatory motive or `affirming his good faith in individual selections.' Alexander v. Louisiana, 405 U.S. [625] at 632, 92 S.Ct. [1221] at 1226 [31 L.Ed.2d 536 (1972)]. If these general assertions were accepted as rebutting a defendant's prima facie case, the Equal Protection Clause `would be but a vain and illusory requirement.' Norris v. Alabama, supra, 294 U.S. at 598, 55 S.Ct., at 583-84. The prosecutor therefore must articulate a neutral explanation related to the particular case to be tried. The trial court then will have the duty to determine if the defendant has established purposeful discrimination."
Prior to selection of the jury, defense counsel requested that the race of prospective jurors be noted by the clerk, which request was granted. The request was based on "recent decisions in the federal courts", without further articulation.
After the jury was selected and before trial began, defense counsel made a "general objection to the constitution of the jury venire as demonstrating a gross racial imbalance of white to black." Counsel objected "to the systematic exclusion of blacks from the jury by the State of Louisiana and by the permission of excuses from service prior to trial," which counsel stated was predominantly in favor of excluding blacks. Counsel also objected on the basis of the exclusion of a number of blacks who expressed disbelief in capital punishment.
At no time prior to, during or after the selection of the jury did defense counsel mention peremptory challenges by the state or direct any objection thereto. No effort was made by defense counsel to raise an inference of discrimination or to establish a prima facie case of discrimination based on the state's use of peremptory challenges. Accordingly, the trial court never had occasion to consider whether a prima facie case was established and, likewise, the state never had an occasion to offer neutral explanations for the peremptory challenges.
LSA-C.Cr.P. Art. 841 requires a contemporaneous objection in order to preserve the objection for review on appeal. In United States v. Ratcliff, 806 F.2d 1253 (La.App. 5th Cir.1986), the court rejected the defendant's Batson argument on appeal, holding that defendant "failed to timely raise this objection at trial." In United States v. Forbes, 816 F.2d 1006 (La.App. 5th Cir.1987), where a Batson objection had been made in the trial court but defense counsel did not challenge the prosecution's explanation of a peremptory challenge, the appellate court held:
"Now it is too late for appellants to insist on an explanation they did not request at trial. Cf. Batson, 106 S.Ct. at 1724-25 (referring to defendant's "timely objection" to prosecutor's strike); Erwin, 793 F.2d at 667 ("The Court in Batson envisioned that a motion to strike would be made promptly, probably before the venire was dismissed."). The "timely objection" rule is designed to prevent defendants from "sandbagging" the prosecution by waiting until trial has concluded unsatisfactorily before insisting on an explanation for jury strikes that by then the prosecutor may largely have forgotten. Furthermore, prosecutorial misconduct is easily remedied prior to commencement of trial simply by seating the wrongfully struck venireperson. After trial, the only remedy is setting aside the conviction. Batson, 106 S.Ct. at 1725. This is an equally important justification for the "timely objection" rule.
In Batson, the court made it clear that there must be a showing by the defendant in the trial court and emphasized the role of the trial judge in determining whether there is a prima facie showing of discrimination and, after the prosecution's response, whether the defendant has established purposeful discrimination.
A Batson objection to the state's use of peremptory challenges must be made during the jury selection process. The defendant must articulate the objection and has the initial burden of establishing the inference *863 or prima facie case of purposeful discrimination in the trial court at a time in the proceeding when the state has the opportunity to come forward with a neutral explanation and the problem, if one is found to exist by the trial court, can be corrected. The defendant cannot make a general objection to the racial composition of the jury and then, without more, sit back and wait to raise the specific issue of discriminatory use of peremptory challenges on appeal.
Here, the defense's objection to the racial composition of the jury was "general" and apparently directed to the makeup of the venire, excuses granted prior to trial, and challenges because of prospective, jurors views on capital punishment. No objection was made to the state's peremptory challenges. No inference or prima facie case of discrimination based on the use of peremptory challenges was raised or made in the trial court. Having failed to timely and specifically raise an objection to the state's use of peremptory challenges and to establish an inference or prima facie case of discrimination in the trial court, the issue cannot be considered on appeal.
Furthermore, the record does not support a prima facie case of discrimination based on the use of peremptory challenges by the state. Of the 41 potential jurors who were examined the state only exercised seven of its 12 peremptory challenges. Of the six potential black jurors examined the state accepted one who was the third person selected to serve as a juror, challenged two for cause, and peremptorily challenged three. Of the 35 white potential jurors the state accepted 11, challenged eight for cause and peremptorily challenged four. The numbers alone do not indicate a "pattern" of discrimination and there are no other factors indicating prosecutorial discrimination. The state's challenges for cause were based on valid legal grounds. Contrary to defendant's argument, the state's questioning of the black jurors was consistent with the questioning of white jurors and no inference of discrimination can be drawn from the questioning.
In its appellate brief, the state has offered racially neutral explanations for the three peremptory challenges of black potential jurors. Neutral reasons for peremptory challenges should be given in the trial court for evaluation by the trial judge, after objection to the peremptory challenges by the defense, and not in the appellate court. However, since there was no such objection by the defense in the trial court and no opportunity for the state to come forward with its explanations in that forum, we have considered whether the transcript of the juror questioning supports the explanations. This was done by the appellate courts in United States v. Ratcliff, supra, and State v. Brown, 507 So.2d 304 (La.App. 3d Cir.1987).
The state's explanations are:
1. Potential juror Cheryl Hutchinson was the subject of a peremptory challenge because she stated she would require an eyewitness to convict and the state had no eye witnesses in this case. Additionally she was hesitant to respond to several questions indicating to the prosecutor that she was not a strong individual or perhaps she did not understand the legal process or want to become involved in it. Also the juror stated she needed to take care of her children which would be a obstacle to her devoting her complete attention to the trial;
2. Potential juror Don Potter was the subject of a peremptory challenge because he stated he would not require an eyewitness to convict and in this case the state had no eyewitnesses. In addition, he stated he would do anything to get out of being a juror and indicated that being on the jury was to time consuming for him. Also he was a male about the same age, weight and height as the defendant which led the prosecutor to feel that the juror might identify too closely with the defendant;
3. Potential juror Eva Green was the subject of a peremptory challenge because she was over 70 years of age, stated that she would rather not serve on the jury, and had served on a jury in *864 another case where the charges were thrown out.
The transcript of the questioning of the potential jurors bears out the prosecutor's neutral explanations for the peremptory challenges of the three potential black jurors.
This assignment of error is without merit.
ASSIGNMENT OF ERROR NO. 19
Objection to Irrelevant Testimony
By this assignment, defendant contends that the trial court erred in overruling defendant's objection to irrelevant testimony by Sybil Guidry, the state's fingerprint expert, concerning an unidentified fingerprint.
Relevant evidence is that which makes any fact indicating guilt or innocence more or less probable. State v. Whittaker, supra; State v. Johnson, 453 So.2d 279 (La.App. 2d Cir.1984).
Mrs. Guidry testified that in addition to the two prints positively identified there was a third unidentifiable print found at the scene. She stated that she was not satisfied that it positively matched defendant's fingerprint because it was smudged. She was only able to locate five or six points that matched.
Defense counsel had cross-examined a previous state witness regarding the existence of the third print and we find that Mrs. Guidry's testimony was relevant to a proper understanding of the fingerprint evidence left at the crime scene. The lack of positive identification would go to the weight rather than the admissibility of such evidence. State v. Hall, 262 La. 135, 262 So.2d 498 (1972).
This assignment lacks merit.
ASSIGNMENT OF ERROR NO. 20
Improper Questioning by Prosecutor
By this assignment, defendant contends that the trial court erred in not granting a mistrial on the basis of the district attorney's allegedly improper question concerning the findings of defendant's fingerprint expert.
The district attorney asked Sybil Guidry, the state's fingerprint expert, whether the defendant's fingerprint expert agreed with her findings. Ms. Guidry replied that he did. At that point defense counsel objected to the question on the ground that it was a request for hearsay. He further stated: "If I had wanted the man here to testify, I'd have called him ...". The district attorney replied: "Obviously". The trial court sustained the defendant's hearsay objection and in response to defense counsel's request, admonished the jury to disregard both the question and the answer. Defense counsel did not move for a mistrial.
On appeal, defendant argues that the district attorney's actions rose to the level of prosecutorial misconduct and therefore, the trial court should have declared a mistrial on it's own motion.
While this court does not condone the actions of the district attorney in attempting to elicit hearsay testimony, it was the duty of the defendant to move for a mistrial. Absent such a motion, the only relief that the defendant was entitled to was an admonition to the jury, which he got. LSA-C.Cr.P. Arts. 771, 775; State v. White, 430 So.2d 174, 181 (La.App. 2d Cir.1983).
In any event, considering that the testimony of the state's fingerprint expert convincingly established the fingerprint identification, the reference to defendant's expert was merely cumulative. The admonition was sufficient to minimize any prejudicial effect of the unwarranted hearsay testimony and remarks by the prosecutor.
This assignment lacks merit.
ASSIGNMENT OF ERROR NO. 22
Denial of Motion for MistrialClosing Argument by Prosecutor
By this assignment defendant contends that the trial court erred in failing to grant defendant's motion for a mistrial based on statements made by the state during closing arguments as to the defendant's failure to produce witnesses to prove his innocence. Specifically, the defendant argues that the following passage from the state's closing argument indirectly referred to his *865 failure to testify or present evidence in his defense:
"But let's say this, defense lawyer and client have the right to bring experts into this courtroom. These fingerprints are public record. We have to give them copies which we did before court. They have the right to have whoever they want to come and dispute our experts on anything that we offer as physical evidence because they have seen it all well before court. Did you see anybody from this stand disputing the fingerprints?"
LSA-C.Cr.P. Art. 770 provides in part:
Prejudicial remarks; basis of mistrial.
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
(3) The failure of the defendant to testify in his own defense;
Indirect references to the defendant's failure to testify constitute reversible error only when the prosecutor intended to emphasize defendant's failure to testify. State v. Jackson, 454 So.2d 116 (La.1984); State v. Lowe, 485 So.2d 99 (La.App. 2d Cir.1986) writ denied 488 So.2d 199. A statement that the state's evidence is uncontradicted is not deemed to emphasize the defendant's failure to testify unless the defendant is on the only person who can dispute the state's evidence. Jackson, supra; State v. Martin, 475 So.2d 101 (La.App. 2d Cir.1985).
In this case the prosecutor's statement was directed at the lack of expert testimony to refute the testimony by the state's fingerprint expert. The reference was to a person other than the defendant, that is, to a fingerprint expert, who might have disputed the state's evidence.
Consequently, the prosecutor's remarks did not focus the jury's attention on the defendant's failure to testify. Rather, the prosecutor's remarks were merely a comment on the lack of evidence presented by the defendant, a permissible topic for closing arguments. LSA-C.Cr.P. Art. 774; State v. Smith, 433 So.2d 688 (La.1983).
This assignment lacks merit.
ASSIGNMENT OF ERROR NO. 23
Denial of Motion for MistrialClosing Argument by Prosecutor
By this assignment, defendant contends that the trial court erred in denying defendant's motion for a mistrial on the basis of statements made by the state during closing arguments as to his personal beliefs as to defendant's guilt.
During his closing argument, the prosecutor said, "This is the best fingerprint case I've ever had."
Defendant argues that this is a prohibited expression of the prosecutor's personal opinion as to the defendant's guilt or innocence. He further argues that the comment referred to matters solely within the personal knowledge of the prosecutor that were not presented at trial.
LSA-C.Cr.P. Art. 774 provides in part:
The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state may draw therefrom, and to the law applicable to the case."
A resort to personal experience goes beyond the proper scope of argument, but a verdict will not be overturned on the basis of improper argument unless the reviewer is thoroughly convinced that the remarks influenced the jury and contributed to the verdict. State v. Brown, 395 So.2d 1301 (La.1981); State v. Minnifield, 475 So.2d 108 (La.App. 2d Cir.1985). Mistrial is a drastic remedy and, unless mandated by LSA-C.Cr.P. Art. 770, it is committed to the sound discretion of the trial judge and is warranted only if substantial prejudice results which would deprive defendant of a fair trial. State v. Jarman, 445 So.2d 1184 (La.1984).
The prosecutor's remarks here may have gone beyond the proper scope of argument, but only barely so, and cannot be said to have denied defendant a fair trial before an impartial jury. The reference to personal experience was slight and indirect. Moreover, the judge properly instructed the jury *866 that the closing arguments were not to be considered as evidence.
This assignment lacks merit.
ASSIGNMENT OF ERROR NO. 24
Sufficiency of the Evidence
By this assignment the defendant contends that the trier of fact erred in finding that the state had produced sufficient evidence to prove defendant guilty beyond a reasonable doubt of first degree murder.
LSA-R.S. 14:30 provides in part:
A. First degree murder is the killing of a human being:
(1) When the offender has specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of aggravated kidnapping, aggravated escape, aggravated rape, aggravated burglary, armed robbery or simple robbery;
The standard for reviewing a claim of insufficiency of the evidence is whether viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that the defendant was guilty. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
Defendant first argues that the state did not prove beyond a reasonable doubt that an aggravated burglary occurred because insufficient evidence was presented that an unauthorized entry occurred.
The record reveals that the state did not definitively prove how the perpetrator gained access to the home but Mr. Massey testified that he did not give anyone permission to enter. He also testified that a table located in the back yard had been moved from its normal site to beneath the kitchen window. Jim Churchman, a state police crime laboratory expert, corroborated Mr. Massey's testimony. He testified that he observed faint impressions on the ground where Mr. Massey said the table had been originally located, that the screen to the kitchen window had been removed and that the window was slightly opened. Mr. Churchman also testified that the back door on the porch was flimsy and could be pulled open even when it was locked.
The above testimony coupled with the fact that Mrs. Massey was found in her bed dressed in her night gown was sufficient to support the conclusion that the entry was not authorized.
Next, the defendant argues that only a living being can be the victim of a rape and that the state did not prove that Mrs. Massey was alive when the alleged aggravated rape occurred.
The state's forensic pathologist testified that there was no way to tell if Mrs. Massey was alive when the sperm was deposited in her vagina, but that it was possible. He stated that while her injuries were severe it would have taken several minutes for Mrs. Massey's brain to swell and her heart to eventually fail. He testified that she was definitely alive when the blunt instrument was used to lacerate her vagina. He noted the vagina bled actively indicating that her heart was still pumping when she sustained this injury. He also observed that the redness of the lining of Mrs. Massey's anus indicated that her heart was pumping and that she was alive when her anus was penetrated. These facts are sufficient to support the conclusion that Mrs. Massey was alive when the rape occurred.
This assignment lacks merit.
ASSIGNMENT OF ERROR NO. 25
By this assignment defendant contends that the trial court erred in allowing the district attorney to present portions of his opening statement to the jurors during voir dire examination.
This assignment was not briefed. Assignments not briefed are deemed abandoned. State v. Reed, 324 So.2d 373 (La.1975).
DECREE
For the reasons assigned, the defendant's conviction is affirmed.
AFFIRMED.