**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Elijah W. RATCLIFF,**
**Defendant-Appellant.**

**No. 86–2436**
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Dec. 17, 1986.

Elijah W. Ratcliff, pro se.

James R. Gough, Asst. U.S. Atty., Henry K. Oncken, U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before REAVLEY, JOHNSON and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Elijah W. Ratcliff appeals his conviction for two related offenses: obstructing a proceeding of the Internal Revenue Service by means of a threatening communication and interfering with an internal revenue officer by threat of force. We affirm.

### I.

This case began when the Houston branch of the Internal Revenue Service instituted proceedings against Ratcliff in order to collect the $48,980.74 he owed in personal income tax for the years 1978 to 1981. Revenue officer Joseph Hamilton administratively seized one of Ratcliff's bank accounts on December 14, 1984, and placed liens on several pieces of Ratcliff's property. On December 17, a man identifying himself as either "Ratcliff Reynolds" or "Ratcliff Realty" called the IRS in Houston stating that if Hamilton came "out there" again, he would "blow him to pieces." On January 4, 1985, Ratcliff visited the IRS office and told revenue officer Inge Hunka that he was there to "see what Hamilton's problem was." Hamilton was not in the office at the time.

With the assistance of IRS internal security, Hamilton placed a monitored telephone call to Ratcliff on January 8. Ratcliff told Hamilton in the tape-recorded conversation that: "If I find out you [sic] acting outside the scope of your authority, I'm gonna waste you." Ratcliff also warned that "if you want to be blown to pieces, just put yourself in a position to do so.... It's no, no confusion about what a man means when he's saying blowing somebody to pieces."

Two days later Ratcliff was arrested at his residence in Livingston, Texas. A search of his residence uncovered two rifles and two boxes of cartridges. One of the rifles, a loaded .22 caliber semiautomatic, was found underneath Ratcliff's bed.

Ratcliff was charged with obstructing a proceeding of the IRS in violation of 18 U.S.C. § 1505, and interfering with the administration of the internal revenue laws in violation of 26 U.S.C. § 7212(a). On February 7, 1985, the grand jury returned a four-count indictment: two counts based on the threatening telephone call to officer Hunka and two counts based on the monitored telephone call to Ratcliff. Ratcliff's case was tried before the Honorable Carl O. Bue, Jr., on May 19, 1986. A unanimous jury convicted Ratcliff of the two counts based on the recorded telephone conversation; Ratcliff was found not guilty of the remaining two counts. Ratcliff now appeals.

## II.

### A. Motion for Recusal

■ Ratcliff first complains that Judge Bue should have recused himself because he presided over a previous "civil rights removal action" involving Ratcliff. Ratcliff does not identify the nature of the action or why it would have presented a conflict for Judge Bue. The claim has no merit: a judge is not considered biased simply because he presided over a defendant in an unrelated previous case. The bias must derive from an extrajudicial source. *United States v. Harrelson,* 754 F.2d 1153, 1165 (5th Cir.1985), *cert. denied,*

— U.S. ——, 106 S.Ct. 277, 88 L.Ed.2d 241 (1985).

### B. Denial of Various Discovery Requests

■ Ratcliff next complains that the trial court erred by denying his discovery request for all records and investigative reports substantiating that he owed back taxes. Ratcliff claims he needed these records to show that the IRS fabricated the charge that Ratcliff threatened to "blow [Hamilton] to pieces." The claim is meritless. Not only does the trial court have broad discretion over discovery orders, *Sanders v. Shell Oil Company,* 678 F.2d 614 (5th Cir.1982), but the validity of the tax liability was not relevant to the charges against Ratcliff.

We likewise reject the argument that the trial court should have enforced Ratcliff's subpoena for these documents. Ratcliff asked for and recieved the subpoena on the first day of trial. The subpoena was served the same day, and the IRS apparently made a good faith search for the records. Ratcliff made no motion for enforcement of the subpoena and he offers no reason why the court should have acted *sua sponte.* We detect no error in the trial court's actions.

### C. Speedy Trial

■ Under the Speedy Trial Act, Ratcliff had the right to be brought to trial within seventy days from the date of his indictment. 18 U.S.C. § 3161(c)(1). Certain periods of delay may be excluded, however, from the computation of this seventy-day trial deadline. Ratcliff complains that the delays preceding his trial violate the Act. We find that any delay was justifiable and the Act was satisfied.

Ratcliff was indicted on February 7, 1985. Ratcliff's various pretrial motions accounted for excludable delay from February 19, 1985, through March 26, 1985. The continuance granted in order to obtain substitute counsel accounted for excludable delay from March 26, 1985, through July 18, 1985. Ratcliff's failure to submit to a psy-

chological examination accounted for excludable delay from July 18, 1985, through January 6, 1986. Ratcliff's interlocutory appeals and his numerous motions to dismiss, amend bail, and grant discovery accounted for excludable delay from January 6, 1986, through April 25, 1986. Trial began on May 19, 1986.

### D. Impartial Jury

 Ratcliff, who is black, claims that the government impermissibly discriminated against him by utilizing a peremptory challenge to exclude a black female from the jury. *Batson v. Kentucky*, —— U.S. ——, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Ratcliff's claim is unavailing for two reasons. First, Ratcliff failed to timely raise this objection at trial. Second, Ratcliff does not establish a *prima facie* case of purposeful discrimination as required by *Batson*. It is insufficient that the government merely challenged a prospective juror whose race is the same as that of the defendant; the defendant must "raise an inference that the prosecutor used the practice to exclude the veniremen from the petit jury on account of their race." *Id.* —— U.S. at ——, 106 S.Ct. at 1722–1723, 90 L.Ed.2d at 87–88.

Not only has Ratcliff failed to raise an inference of purposeful discrimination, but in the instant case, there were race-neutral reasons for excluding this juror: she fell asleep during the jury selection process, she had previously had problems with the IRS, and she had taught tax preparation courses. Together with the fact that two of the remaining twelve jurors were black males, we see no hint of racial discrimination in this case.

### E. Introduction of the Firearms as Evidence

 Ratcliff argues next that the firearms should not have been admitted into evidence because his father was their true owner. Ratcliff's emphasis on ownership is irrelevant. The evidence helped prove Ratcliff's access to firearms and his state of mind in threatening Hamilton. The firearms were found in a search of Ratcliff's residence, and a loaded rifle was found under Ratcliff's bed. The weapons were within Ratcliff's control; the fact that they belonged to his father was irrelevant to their admissibility.

### F. Refusal to Take Notice of Pro Se Motions

Ratcliff was represented by competent counsel at all times in the proceedings below. Ratcliff nevertheless persisted in filing pro se motions, often over the objection of his own counsel. The district court ultimately refused to take notice of these motions, and ordered Ratcliff to desist in filing them. We find no error in the trial court's decision.

### III. Conclusion

Ratcliff's remaining allegations of error are frivolous and do not merit discussion. The district court's judgment is therefore

AFFIRMED.