**F.J. ALLEN, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 11–86–157–CR.**

Court of Appeals of Texas, Eastland.

March 19, 1987.

Rehearing Denied April 16, 1987.

Paul Tatum, Holt & Tatum, Nacogdoches, for appellant.

Herbert B. Hancock, Dist. Atty., Nacogdoches, for appellee.

## OPINION

ARNOT, Justice.

F.J. Allen, appellant, was convicted by a jury for the offense of theft of property. Punishment was assessed by the jury at ten years confinement in the Texas Department of Corrections and a $3,000 fine. We affirm.

Beth Tierney testified that on October 27, 1985, she went to Brookshire Brothers Grocery Store in Nacogdoches to do some grocery shopping. Tierney parked her car approximately 20 feet from the front door of the store and approximately 10 feet from a bench in front of the store. As Tierney was leaving her car, she noticed that a man was sitting on the bench. Tierney testified that the man was wearing a jacket, ski cap, and boots. When Tierney walked past the bench to enter the store, the man sitting on the bench grabbed Tierney's purse and fled the scene.

Bill Pedersen, an attorney, testified that he entered Brookshire Brothers shortly before the theft occurred. Pedersen noticed that F.J. Allen, appellant, was sitting on the bench in front of the store. Pedersen was acquainted with Allen, having represented him in past legal matters. Pedersen testified that Allen was wearing a ski cap, jeans, a heavy coat, and boots.

Tierney was subsequently shown a pretrial photographic lineup which included Allen's picture. She was unable to identify anyone in the lineup as the person who stole her purse. At trial, however, Tierney positively identified Allen as her assailant.

Subsequent to his conviction, Allen filed a post-trial "Motion to Set Aside Jury Findings of Guilt." In such motion Allen contended that: (1) he is a member of the black race and was tried by an all white jury; (2) the prosecution used peremptory challenges to strike all black veniremen from the jury panel; and (3) the prosecution's use of peremptory challenges in this case violated his rights under the Equal Protection Clause of the fourteenth amend-

ment to the United States Constitution. The record shows that the district attorney peremptorily struck three black veniremen from the jury panel.

The trial court conducted a post-trial hearing on Allen's motion. Allen's counsel presented the following stipulations and argument in an attempt to establish a prima facie case of discrimination by the State:

DEFENSE ATTORNEY: And in lieu of the originals the State has agreed to stipulate that Defendant's Exhibit Number One is a true and correct copy of the jury chosen, and we would offer same; That Defendant's Exhibit Number Two reflects those challenges made by the State in connection with the peremptory challenge; Defendant's Exhibit Number Three are the challenges that I did in the case, Judge. We would further stipulate that I did not strike a black. Defendant's Exhibit Number Four is the Clerk's combination that resulted in the actual panel that served on the jury. Exhibit Number Five reflects the questionnaires of each of the State's jurors that were struck, which was drawn from our records, and further stipulate that these are the questionnaires that are made available during the—prior to the selection of the jury. We would offer one through five.

PROSECUTING ATTORNEY: We have no objections, Your Honor.

THE COURT: The exhibits are each admitted.

DEFENSE ATTORNEY: It is further stipulated that the Defendant in this case is a black. Further stipulated— Mr. Hancock also went over the questionnaires—that Juror Number 41A, 117, and 134, being the original number, were black. And with that under the decision we submitted to the Court [Batson v. Kentucky, 476 U.S. ——, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986)] and in view of the overruling of Swain vs. Alabama it constitutes a prima facie issue of discrimination by use of peremptory challenges, and the State

has a duty to justify the exercise of their challenge.

The State then presented testimony from the prosecuting district attorney. The district attorney candidly testified that he could not recall why he had peremptorily challenged each of the three black jurors. The district attorney was, however, adamant in his assertion that race was not a factor he used when selecting a jury. After considering the argument of counsel and the evidence presented, the trial court denied Allen's motion as "untimely filed and without merit."

■ Allen urges two points of error. In Point of Error No. 1, he argues that the evidence is insufficient to sustain his conviction because such evidence does not show that Allen actually ever possessed the purse as alleged in the indictment. In deciding a sufficiency of evidence point, the proper standard of review is whether, after viewing *all* the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Dunn v. State,* 721 S.W.2d 325, 327 (Tex.Cr.App.1986); *Chambers v. State,* 711 S.W.2d 240, 245 (Tex.Cr.App. 1986); *Houston v. State,* 663 S.W.2d 455, 456 (Tex.Cr.App.1984). Applying this standard, we hold that the evidence is sufficient to sustain Allen's conviction. A rational trier of fact could have concluded from the evidence and testimony presented by the State that Allen unlawfully exercised control over the purse without the effective consent of its owner, Beth Tierney. Allen's first point of error is overruled.

In his second point of error, Allen contends that the State failed to justify the allegedly discriminatory use of peremptory challenges under the doctrine of *Batson v. Kentucky,* 476 U.S. ——, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and the Texas Constitution. In *Batson,* the Supreme Court of the United States set forth three requirements that a defendant must satisfy in order to establish a prima facie case of "purposeful discrimination" in the selection of a petit jury. First, the defendant must show that he is a member of a cognizable racial group

as defined by *Castaneda v. Partida,* 430 U.S. 482, 494, 97 S.Ct. 1272, 1280, 51 L.Ed.2d 498 (1977). *Batson v. Kentucky,* supra, at 476 U.S. ——, 106 S.Ct. 1722, 90 L.Ed.2d 87. Secondly, the defendant must establish that the prosecutor exercised peremptory challenges to remove members of the defendant's race from the venire panel. The defendant is entitled to rely on the premise that peremptory challenges permit "those to discriminate who are of a mind to discriminate." Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used peremptory challenges to exclude the veniremen from the petit jury on account of their race. *Batson v. Kentucky,* supra at 476 U.S. ——, 106 S.Ct. 1723, 90 L.Ed.2d 88.

Once the defendant has established a prima facie case of purposeful discrimination, the burden shifts to the State to come forward with "neutral explanations" for challenging the excluded jurors. The prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause. The trial court must then determine whether the defendant has established purposeful discrimination, which if shown, will constitute a violation of the defendant's rights to equal protection under the law. *Batson v. Kentucky,* supra.

■ The record established that Allen was a member of a "cognizable race" and that the district attorney used peremptory challenges to exclude all three members of Allen's race from the venire panel. Thus, the first two requirements necessary to establish a prima facie case were summari-

ly shown. *Keeton v. State,* 724 S.W.2d 58 (Tex.Cr.App., 1987). Regarding the third requirement, we must examine the record to determine whether facts existed sufficient to support an inference that the district attorney used peremptory challenges to exclude veniremen from the petit jury on account of their race. *Batson v. Kentucky,* supra at 476 U.S. ——, 106 S.Ct. 1722, 90 L.Ed.2d 87; *Keeton v. State,* supra at 65.

The jury panel was voir dired as a group. The transcript of the voir dire examination reveals that the district attorney did not ask any questions directed specifically to the black veniremen whom he struck. There was, in fact, no conversation between the struck veniremen and the district attorney at all. There is nothing in the questioning or examination of the venire panel which would support an inference that the district attorney used his peremptory challenges for a discriminatory purpose.[1] The remainder of the record is likewise void of any evidence of a discriminatory motive on the part of the district attorney.

We do not interpret the Supreme Court's opinion in *Batson* as merely requiring the defendant to show that black veniremen were peremptorily struck; the defendant must also raise an inference that the prosecutor used the practice to exclude the veniremen from the petit jury on account of their race. *Batson* supra at 476 U.S. ——, 106 S.Ct. 1722–1723, 90 L.Ed.2d 87–88; *United States v. Ratcliff,* 806 F.2d 1253, 1256 (5th Cir.1986); *United States v. Dennis,* 804 F.2d 1208, 1210–11 (11th Cir.

1. The questions asked the venire panel by the district attorney were of a general, routine nature. The venire panel was asked whether anyone among them: knew the defendant; had personal knowledge of the facts of the case; knew the district attorney or defense counsel; could assess the full range of punishment; and other general comments. The only individual conversation that the district attorney had with *any* of the veniremen was with prospective juror Barbara Scroggins:
    Q: Are there those of you on the panel that know F.J. Allen?
    Mrs. Scroggins. Mrs. Scroggins, is there anything about that knowledge that would prevent you from listening to the facts in this

case and making your decision upon those facts and nothing else?
A: No, sir.
Q: Okay. The fact that you know the Defendant would in no way affect your ability to listen to the facts in this case?
A: No.
Q: You don't know anything good or bad, you just know Bojack Allen, is that correct?
A: (nodded head affirmatively).
Mrs. Scroggins was subsequently peremptorily challenged by the district attorney. She was not, however, one of the three black jurors peremptorily struck who served as the basis of Allen's *Batson* objection.

1986). As Justice White noted in his concurring opinion filed in the *Batson* case:

> The Court emphasizes that using peremptory challenges to strike blacks does not end the inquiry; it is not unconstitutional, without more, to strike one or more blacks from the jury. The judge may not require the prosecutor to respond at all.

*Batson v. Kentucky*, supra at 476 U.S. ——, 106 S.Ct. 1725, 90 L.Ed.2d 91 (White, J., concurring). We hold that Allen failed to establish a prima facie case of purposeful discrimination. *Keeton v. State*, supra at 66. See also *Rijo v. State*, 721 S.W.2d 562, 564 (Tex.App.—Amarillo 1986, no pet'n).

■ Moreover, we note that Allen waited until *after* the trial was over to assert his *Batson* objection. In *Price v. State*, 726 S.W.2d 611 (Tex.App.—Houston [14th Dist.] 1987, no pet'n) (not yet reported), the court considered a *Batson* objection made after the venire panel had been dismissed:

> We hold that in order to be timely, a *Batson* objection to the State's use of its peremptory challenges (or a motion to quash the jury) must be made before the venire is dismissed. *United States v. Erwin*, 793 F.2d 656, 667 (5th Cir.1986). Then the prosecutor is put on notice that he may be required to come forward with neutral explanations for striking the black veniremembers. With the venire still before him, the prosecutor has the opportunity to associate the names and faces of the stricken veniremembers with his reasons for striking them. *Because*

**2.** The voir dire examination in the instant case was conducted on March 17, 1986. The Supreme Court's opinion in *Batson v. Kentucky*, supra at 476 U.S. ——, 106 S.Ct. 1712, 90 L.Ed.2d 69 was decided on April 30, 1986. Allen's appeal, therefore, comes within the rule announced by the Supreme Court in *Griffith v. Kentucky*, 479 U.S. ——, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). In *Griffith*, the Supreme Court held that the ruling in *Batson* was to be applied retroactively to all cases pending on direct review or not yet final when *Batson* was announced. *Griffith v. Kentucky*, supra at 479 U.S. ——, 107 S.Ct. 710, 93 L.Ed.2d 654.

The Supreme Court consolidated two cases for review in *Griffith*. Unlike the instant case,

*appellant's objection was untimely, he has waived it.* (Emphasis added)

See also *United States v. Ratcliff,* supra at 1256.

■ We agree with the reasoning of the Houston Court of Appeals. If the prosecuting district attorney had been aware of Allen's *Batson* objection when the venire panel was still before him, he would have been in a better position to provide "neutral explanations" as to why he struck the black veniremen. We hold that Allen failed to timely make his *Batson* objection and, therefore, waived it.[2] Based upon this waiver, and also upon Allen's failure to establish a prima facie case of purposeful discrimination, we overrule Point of Error No. 2.

The judgment of the trial court is affirmed.

both of the defendants in *Griffith* objected to the prosecutor's use of peremptory challenges *before* the evidence phase of the trials was conducted. Although we cannot discern the precise moment in *Griffith* when the defendants objected, the facts and circumstances of both cases suggest that the defendants objected before the venire panels were dismissed. Therefore, although Allen's *Batson* objection is properly subject to appellate review under the ruling in *Griffith*, his failure to timely object before the venire panel was dismissed constituted a waiver of his complaint. *United States v. Erwin*, 793 F.2d 656, 667 (5th Cir.1986); *Price v. State*, supra at 613.