This case presents an issue very important to trial judges, prosecutors, defense counsel, and civil litigants also: What must a party show to establish a prima facie case of a Batson[4]
violation?
I did not participate in the decision on original deliverance, but I agree with the State, in its application for rehearing, that this Court has failed to follow the principles of law stated by the Supreme Court of the United States inHernandez v. New York, 500 U.S. 352, 111 S.Ct. 1859,114 L.Ed.2d 395 (1991), wherein the Court gave some specific directions for appellate courts to follow in reviewing factual determinations made by trial courts in regard to Batson
challenges. Consequently, I must respectfully disagree with the Court's decision not to grant a rehearing in this case.
The majority of this Court, in reversing the judgment of the Court of Criminal Appeals, concluded, as a matter of law, that the defendant had established a prima facie case of purposeful
racial discrimination. This conclusion by the majority, as I view it, was based solely on the defendant's showing that the prosecutor had used 9 of his 10 peremptory strikes to exclude blacks from the jury, without giving any consideration to the fact that the defendant used all of his peremptory strikes to remove white jurors and did not strike a single black juror. The effect of the action by both parties was that the jury selected to try the case consisted of 6 blacks, including one not stricken by the prosecution who could have been stricken, and 6 whites.
The trial judge determined that the defendant had not made aprima facie showing of purposeful racial discrimination; therefore, he did not require the prosecutor to state race-neutral reasons for his strikes. I would not reverse, because I do not believe that the defendant made a sufficient showing of purposeful discrimination.
I am convinced that the majority, in concluding that aprima facie showing was made, has not applied what I consider to be the proper principles of law that govern appellate review of a trial judge's determination.
To invoke Batson, a defendant must initially establish aprima facie case of purposeful discrimination, by showing that the prosecutor has peremptorily challenged members of his race under circumstances that raise an inference of discrimination. Cf. United States v. Lewis, 837 F.2d 415 (9th Cir. 1988). To defeat such a showing, the prosecutor must "articulate a [race-]neutral explanation [for the challenge] related to the particular case to be tried." Batson, 476 U.S. at 98,106 S.Ct. at 1724. If the court finds that the explanation is not race-neutral, then the Batson remedy is mandated. Id. at 99 n. 24, 106 S.Ct. at 1724 n. 24. Appellate courts give great deference to the trial court's findings and will not disturb them unless they are clearly erroneous. See Hernandez v. NewYork, 500 U.S. 352, 364, 111 S.Ct. 1859, 1869, 114 L.Ed.2d 395
(1991), in which the Supreme *Page 10 
Court of the United States held, in reviewing a Batson claim arising out of a state prosecution, that an appellate court should decline to overturn a trial court's finding on the issue of discriminatory intent unless the appellate court is convinced that the trial court's determination was clearly erroneous. The Supreme Court also held in Hernandez that an appellate court should not conduct an "independent" appellate review. By using only the statistics shown in the record, the majority, it seems to me, has done what the law says should not be done; it has conducted an "independent" review of the facts surrounding the Batson challenge, and in doing so, not only has supplanted its determination of a prima facie showing for the determination of the trial court, but also has explicitly overruled several Alabama cases.
I believe that the majority fails to apply the initial mandate of Batson, as further explained in some detail inHernandez, and has unnecessarily made the application of Batson
by trial judges even more foreboding than it was.
In Hernandez, the Supreme Court stated the principles that should guide an appellate court in determining whether there has been a showing of purposeful discrimination:
 "In evaluating the race-neutrality of an attorney's explanation, a court must determine whether, assuming the proffered reasons for the peremptory challenges are true, the challenges violate the Equal Protection Clause as a matter of law. A court addressing this issue must keep in mind the fundamental principle that 'official action will not be held unconstitutional solely because it results in a racially disproportionate impact. . . . Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause.' Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 264-265, 97 S.Ct. 555, 563, 50 L.Ed.2d 450
(1977); see also Washington v. Davis, 426 U.S. 229, 239, 96 S.Ct. 2040, 2047, 48 L.Ed.2d 597 (1976). ' "Discriminatory purpose" . . . implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker . . . selected . . . a particular course of action at least in part "because of," not merely "in spite of," its adverse effects upon an identifiable group.' Personnel Administrator of Massachusetts v. Feeney, 442 U.S. 256, 279, 99 S.Ct. 2282, 2296, 60 L.Ed.2d 870 (1979) (footnote and citation omitted); see also McCleskey v. Kemp, 481 U.S. 279, 297-299, 107 S.Ct. 1756, 1769-1770, 95 L.Ed.2d 262 (1987)."
Hernandez, 500 U.S. at 359-360, 111 S.Ct. at 1866.
In commenting on the standards of appellate review, the Court said:
 "Batson's treatment of intent to discriminate as a pure issue of fact, subject to review under a deferential standard, accords with our treatment of that issue in other equal protection cases. See Hunter v. Underwood, 471 U.S. 222, 229, 105 S.Ct. 1916, 1921, 85 L.Ed.2d 222 (1985) (Court of Appeals correctly found that District Court committed clear error in concluding state constitutional provision was not adopted out of racial animus); Rogers v. Lodge, 458 U.S. 613, 622-623, 102 S.Ct. 3272, 3278-3279, 73 L.Ed.2d 1012 (1982) (clearly erroneous standard applies to review of finding that at-large voting system was maintained for discriminatory purposes); Dayton Board of Education v. Brinkman, 443 U.S. 526, 534, 99 S.Ct. 2971, 2977, 61 L.Ed.2d 720 (1979) (affirming Court of Appeals' conclusion that District Court's failure to find the intentional operation of a dual school system was clearly erroneous); Akins v. Texas, 325 U.S. 398, 401-402, 65 S.Ct. 1276, 1278, 89 L.Ed. 1692 (1945) (great respect accorded to findings of state court in discriminatory jury selection case); see also Miller v. Fenton, 474 U.S. 104, 113, 106 S.Ct. 445, 451, 88 L.Ed.2d 405 (1985). As Batson's citation to Anderson [v. Bessemer City, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985),] suggests, it also corresponds with our treatment of the intent inquiry under Title VII. See Pullman-Standard v. Swint, 456 U.S. 273, 293, 102 S.Ct. 1781, 1792, 72 L.Ed.2d 66 (1982).
 "Deference to trial court findings on the issue of discriminatory intent makes particular sense in this context because, as we *Page 11 
noted in Batson, the finding will 'largely turn on evaluation of credibility.' 476 U.S., at 98, n. 21, 106 S.Ct., at 1724, n. 21. In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge. As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies 'peculiarly within a trial judge's province.' Wainwright v. Witt, 469 U.S. 412, 428, 105 S.Ct. 844, 854, 83 L.Ed.2d 841 (1985), citing Patton v. Yount, 467 U.S. 1025, 1038, 104 S.Ct. 2885, 2892, 81 L.Ed.2d 847 (1984).
 "The precise formula used for review of fact findings, of course, depends on the context. Anderson was a federal civil case, and we there explained that a federal appellate court reviews the finding of a district court on the question of intent to discriminate under Federal Rule of Civil Procedure 52(a), which permits factual findings to be set aside only if clearly erroneous. While no comparable rule exists for federal criminal cases, we have held that the same standard should apply to review of findings in criminal cases on issues other than guilt. Maine v. Taylor, 477 U.S. 131, 145, 106 S.Ct. 2440, 2450, 91 L.Ed.2d 110 (1986); Campbell v. United States, 373 U.S. 487, 493, 83 S.Ct. 1356, 1360, 10 L.Ed.2d 501 (1963); 2 C. Wright, Federal Practice and Procedure § 374 (2d ed. 1982 and Supp. 1990). On federal habeas review of a state conviction, 28 U.S.C. § 2254(d) requires the federal courts to accord state court factual findings a presumption of correctness."
Hernandez, 500 U.S. at 365-366, 111 S.Ct. at 1869.
 "A neutral explanation in the context of our analysis here means an explanation based on something other than the race of the juror. At this step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral."
Hernandez, 500 U.S. at 360, 111 S.Ct. at 1866.
In Hernandez, Justice O'Connor, who was joined by Justice Scalia, concurred specially. She wrote:
 "An unwavering line of cases from this Court holds that a violation of the Equal Protection Clause requires state action motivated by discriminatory intent; the disproportionate effects of state action are not sufficient to establish such a violation. In Washington v. Davis, 426 U.S. 229, 239, 96 S.Ct. 2040, 2047, 48 L.Ed.2d 597 (1976), we explained that 'our cases have not embraced the proposition that a law or other official act, without regard to whether it reflects a racially discriminatory purpose, is unconstitutional solely because it has a racially disproportionate impact.' '[A] defendant who alleges an equal protection violation has the burden of proving "the existence of purposeful discrimination." ' McCleskey v. Kemp, 481 U.S. 279, 292, 107 S.Ct. 1756, 1767, 95 L.Ed.2d 262 (1987). See also Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 264-265, 97 S.Ct. 555, 562-563, 50 L.Ed.2d 450 (1977); Keyes v. School Dist. No. 1, Denver, Colo., 413 U.S. 189, 198, 93 S.Ct. 2686, 2689, 37 L.Ed.2d 548 (1973); Wright v. Rockefeller, 376 U.S. 52, 56-57, 84 S.Ct. 603, 605-606, 11 L.Ed.2d 512 (1964).
 "We have recognized the discriminatory intent requirement explicitly in the context of jury selection. Thus, '[a] purpose to discriminate must be present which may be proven by systematic exclusion of eligible jurymen of the proscribed race or by unequal application of the law to such an extent as to show intentional discrimination.' Akins v. Texas, 325 U.S. 398, 403-404, 65 S.Ct. 1276, 1279, 89 L.Ed. 1692 (1945). See also Alexander v. Louisiana, 405 U.S. 625, 628-629, 92 S.Ct. 1221, 1224-1225, 31 L.Ed.2d 536 (1972); Whitus v. Georgia, 385 U.S. 545, 549-550, 87 S.Ct. 643, 646-647, 17 L.Ed.2d 599 (1967); Norris v. Alabama, 294 U.S. 587, 589, 55 S.Ct. 579, 580, 79 L.Ed. 1074 (1935); Neal v. *Page 12 Delaware, 103 U.S. 370, 394, 26 L.Ed. 567 (1881). The point was made clearly in Batson itself: 'As in any equal protection case, the "burden is, of course," on the defendant who alleges discriminatory selection . . . "to prove the existence of purposeful discrimination." ' 476 U.S., at 93, 106 S.Ct., at 1721, quoting Whitus, supra, 385 U.S., at 550, 87 S.Ct., at 646.
 "Consistent with our established equal protection jurisprudence, a peremptory strike will constitute a Batson violation only if the prosecutor struck a juror because of the juror's race. '[T]he Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that [Hispanic] jurors as a group will be unable impartially to consider the State's case.' Batson, 476 U.S., at 89, 106 S.Ct., at 1719 (emphasis added). See also Powers v. Ohio, 499 U.S. [400, 409], 111 S.Ct. 1364, 1370, 113 L.Ed.2d 411 (1991) ('the Equal Protection Clause prohibits a prosecutor from using the State's peremptory challenges to exclude otherwise qualified and unbiased persons from the petit jury solely by reason of their race'). Batson's requirement of a race-neutral explanation means an explanation other than race.
 "In Washington v. Davis, supra, we outlined the dangers of a rule that would allow an equal protection violation on a finding of mere disproportionate effect. Such a rule would give rise to an unending stream of constitutional challenges:
 " 'A rule that [state action] designed to serve neutral ends is nevertheless invalid, absent compelling justification, if in practice it benefits or burdens one race more than another would be far reaching and would raise serious questions about, and perhaps invalidate, a whole range of tax, welfare, public service, regulatory, and licensing statutes that may be more burdensome to the poor and to the average black than to the more affluent white.' Id., 426 U.S., at 248, 96 S.Ct., at 2051.
 "In the same way, a rule that disproportionate effect might be sufficient for an equal protection violation in the use of peremptory strikes runs the serious risk of turning voir dire into a full-blown disparate impact trial, with statistical evidence and expert testimony on the discriminatory effect of any particular nonracial classification. In addition to creating unacceptable delays in the trial process, such a practice would be antithetical to the nature and purpose of the peremptory challenge. Absent intentional discrimination violative of the Equal Protection Clause, parties should be free to exercise their peremptory strikes for any reason, or no reason at all. The peremptory challenge is 'as Blackstone says, an arbitrary and capricious right; and it must be exercised with full freedom, or it fails of its full purpose.' Lewis v. United States, 146 U.S. 370, 378, 13 S.Ct. 136, 139, 36 L.Ed. 1011 (1892) (internal quotations omitted)."
Hernandez, 500 U.S. at 372-374, 111 S.Ct. at 1873-74.
The prosecutor did not use all of his peremptory strikes to remove black jurors. It has been held that the willingness of a prosecutor to accept minority jurors weighs against the finding of a prima facie case. See United States v. Montgomery,819 F.2d 847, 851 (8th Cir. 1987) (no prima facie case where the Government (1) accepted a jury that included two blacks; (2) could have used its remaining peremptory challenges to strike these remaining blacks; and (3) did not attempt to exclude all blacks (or as many blacks as it could); accord United States v.Ratcliff, 806 F.2d 1253, 1256 (5th Cir. 1986) (although one black was struck, two blacks remained on jury), cert. denied,481 U.S. 1004, 107 S.Ct. 1625, 95 L.Ed.2d 199 (1987); UnitedStates v. Dennis, 804 F.2d 1208, 1210-11 (11th Cir. 1986) (three blacks were excluded, but two blacks remained on jury), cert. denied, 481 U.S. 1037, 107 S.Ct. 1973, 95 L.Ed.2d 814 (1987).
In Batson, the Supreme Court did not specify the showing necessary to establish a prima facie case of discrimination. The Court stated: "We have confidence that trial judges, experienced in supervising voir dire, will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates a prima facie case of *Page 13 
discrimination against black jurors." 476 U.S. at 97,106 S.Ct. at 1723. In making this determination, trial judges must be guided by the principles enunciated in Batson. The core teaching of Batson is that a "defendant [has] the right to be tried by a jury whose members are selected pursuant to nondiscriminatory criteria." Batson v. Kentucky,476 U.S. at 85-86, 106 S.Ct. at 1716-1717. "Purposeful racial discrimination in selection of the venire violates a defendant's right to equal protection . . . ." 476 U.S. at 86,106 S.Ct. at 1717.
In Georgia v. McCollum, 505 U.S. 42, 112 S.Ct. 2348,120 L.Ed.2d 33 (1992), the Supreme Court recounted the history of the use of peremptory challenges and held "that the Constitution prohibits a criminal defendant from engaging in purposeful discrimination on the ground of race in the exercise of peremptory challenges" and that "if the State demonstrates a prima facie case of racial discrimination by the defendants, the defendants, must articulate a racially neutral explanation for peremptory challenges." 505 U.S. at 59, 112 S.Ct. at 2359.
In McCollum, the Court discussed the principles of law that undergirded the Batson decision:
 "The majority in Powers recognized that 'Batson
"was designed 'to serve multiple ends,' " only one of which was to protect individual defendants from discrimination in the selection of jurors.' 499 U.S., at [406], 111 S.Ct., at 1368. As in Powers
and Edmonson [v. Leesville Concrete Co., 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660] [(1991)], the extension of Batson in this context is designed to remedy the harm done to the 'dignity of persons' and to the 'integrity of the courts.' Powers, at [402], 111 S.Ct., at 1366.
 "As long ago as Strauder [v. State of West Virginia, 100 U.S. 303, 25 L.Ed. 664] [(1880)], this Court recognized that denying a person participation in jury service on account of his race unconstitutionally discriminates against the excluded juror. 100 U.S., at 308. See also Batson, 476 U.S., at 87, 106 S.Ct., at 1718. While '[a]n individual juror does not have a right to sit on any particular petit jury, . . . he or she does possess the right not to be excluded from one on account of race.' Powers, 499 U.S., at [409], 111 S.Ct., at 1370. Regardless of who invokes the discriminatory challenge, there can be no doubt that the harm is the same — in all cases, the juror is subjected to open and public racial discrimination.
 "But 'the harm from discriminatory jury selection extends beyond that inflicted on the defendant and the excluded juror to touch the entire community.' Batson, 476 U.S., at 87, 106 S.Ct., at 1718. One of the goals of our jury system is 'to impress upon the criminal defendant and the community as a whole that a verdict of conviction or acquittal is given in accordance with the law by persons who are fair.' Powers, 499 U.S., at [413], 111 S.Ct., at 1372. Selection procedures that purposefully exclude African-Americans from juries undermine that public confidence — as well they should. 'The overt wrong, often apparent to the entire jury panel, casts doubt over the obligation of the parties, the jury, and indeed the court to adhere to the law throughout the trial of the cause.' Id., at [411-412], 111 S.Ct., at 1371. See generally Underwood, Ending Race Discrimination in Jury Selection: Whose Right Is It, Anyway?, 92 Colum.L.Rev. 725, 748-750 (1992).
 "The need for public confidence is especially high in cases involving race-related crimes. In such cases, emotions in the affected community will inevitably be heated and volatile. Public confidence in the integrity of the criminal justice system is essential for preserving community peace in trials involving race-related crimes. See Alschuler, The Supreme Court and the Jury: Voir Dire, Peremptory Challenges, and the Review of Jury Verdicts, 56 U.Chi.L.Rev. 153, 195-196 (1989) (describing two trials in Miami, Fla., in which all African-American jurors were peremptorily struck by white defendants accused of racial beating, and the public outrage and riots that followed the defendants' acquittal).
 "Be it at the hands of the State or the defense, if a court allows jurors to be excluded because of group bias, it is a *Page 14 
willing participant in a scheme that could only undermine the very foundation of our system of justice — our citizens' confidence in it. Just as public confidence in criminal justice is undermined by a conviction in a trial where racial discrimination has occurred in jury selection, so is public confidence undermined where a defendant, assisted by racially discriminatory peremptory strikes, obtains an acquittal."
McCollum, 505 U.S. at 49-50, 112 S.Ct. at 2353-54.
Even though the State here did not make a cross-Batson challenge, it is apparent from the record that the defendant in this case, while making a Batson challenge, had at the same time used all of his peremptory challenges to remove white jurors. It would appear that the trial judge, in ruling on the defendant's challenge and considering whether the defendant had established a prima facie case, could apply this statement in McCollum: "Be it at the hands of the State or the defense, if a court allows jurors to be excluded because of group bias, it is a willing participant in a scheme that could only undermine the very foundation of our system of justice — our citizens' confidence in it." 505 U.S. at 49-50,112 S.Ct. at 2354.
I would apply the principle of Hernandez here and would grant great deference to the trial judge, who is on the scene and who can best judge the credibility of the participants and determine what actually occurred. Neither the State nor the defendant should use racial stereotypes in exercising peremptory challenges.
As I stated earlier, I do not believe that the defendant carried her burden of showing purposeful discrimination
considering all the circumstances shown by this record. I would not overturn the finding by the trial judge in this case. I dissent.
[4] Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69
(1986).