704 So.2d 1 (1997)
STATE of Louisiana
v.
Tyris WILKERSON.
No. 96 KA 1965.
Court of Appeal of Louisiana, First Circuit.
November 7, 1997.
*2 Monisa L. Thompson, A.D.A., Baton Rouge, for State.
David Price and Sean A. Jackson, Baton Rouge, for Defendant-Appellant.
Before LOTTINGER, C.J., and SHORTESS and FOGG, JJ.
SHORTESS, Judge.
Tyris[1] Wilkerson (defendant) was charged by grand jury indictment with second-degree murder, La. R.S. 14:30.1. After a jury trial, he was found guilty as charged. The trial court sentenced defendant to life imprisonment at hard labor, without benefit of probation, parole or suspension of sentence, but because defendant was fourteen years old at the time of the murder, further provided in accordance with Louisiana Children's Code article 857(B) that defendant should not be confined beyond his thirty-first birthday. Defendant appealed his conviction and sentence. He originally asserted eight assignments of error, but assignment of error number two was expressly abandoned in his brief.

Facts
On the evening of September 19, 1994, as Frederick Young sat in his van on a public street, defendant shot him twice with a 22-caliber revolver. Young was struck in his upper left arm and the left side of his head, near the eyebrow; the latter wound was fatal. After the shots were fired, the van rolled forward, causing him to drop his gun into the van. When the van came to a stop against a fence, defendant retrieved his gun and used his shirt to wipe his fingerprints off the van.
Defendant was fourteen years old at the time of the murder. According to his statement to the police, he was standing on a street corner when Young called him over to his van and asked if he had any dope. Defendant asked what he wanted and Young indicated rock cocaine. Defendant claimed that, when he reached inside the van to show Young three rocks of cocaine, Young grabbed his arm, so he pulled out his gun and shot it three or four times. Defendant denied ever seeing Young before.
Defendant's half-brother, Terry Allen, was standing on the street corner with defendant prior to the shooting. He testified at trial that defendant at the time "was stressing that the man [Young] had got him, took some money from him." Shortly thereafter, he saw defendant shoot Young. He did not see the victim touch defendant.

Assignments of Error Nos. 1 and 4
In his first assignment of error, defendant argues the trial court erred in denying his motion to exclude other-crimes evidence. In assignment of error number four, he alleges on the same grounds the trial court erred in denying his motion for new trial.
Generally, evidence of criminal offenses other than the offense being tried is inadmissible as substantive evidence because of the substantial risk of grave prejudice to the defendant. In order to avoid the unfair inference that a defendant committed a particular crime simply because he is a person of criminal character, other-crimes evidence is inadmissible unless it has an independent relevancy besides simply showing a criminal disposition. State v. Parker, 625 So.2d 1364, 1371 (La.App. 1st Cir.1993), writ denied, 93-2832 *3 (La.2/25/94), 632 So.2d 761. Further, even when independently relevant, the probative value of the evidence must be weighed against its prejudicial effect. State v. Jackson, 625 So.2d 146, 148 (La.1993).
Louisiana Code of Evidence article 404(B)(1) provides:
Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, ... or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
Defendant filed a motion to exclude evidence of two prior incidents the State indicated in discovery answers it intended to use at trial. A hearing was held on the day of trial during which the State said it intended to use evidence of the prior incidents to show defendant's "knowledge, intent, guilty knowledge, system, motive and identity, and any other purpose allowed by article 404(B) of the Code of Evidence." The first alleged incident involved the robbery and shooting of Natley Johnson at a park on Geronimo Street on August 8, 1994. The second incident occurred on September 17, 1994, when defendant allegedly robbed and shot Jerome Byrd at a service station on Scenic Highway. The trial court ruled evidence of the Johnson shooting was inadmissible under State v. Prieur, 277 So.2d 126 (La.1973), because it was too remote in time and not similar to the charged offense. However, the court held the evidence of the Byrd shooting was admissible because it "occurred just in a matter of days in the same neighborhood at the same time, same type of robbery, or shooting...."
Before other-crimes evidence may be introduced, the State must prove the defendant committed the other crime. In Prieur, the Louisiana Supreme Court stated the applicable burden of proof was by clear and convincing evidence. See Prieur, 277 So.2d at 129. Former Code of Evidence article 1103 reiterated this standard as the applicable burden of proof for the admission of other-crimes evidence. Article 1103, however was repealed in 1995.[2] Code of Evidence article 1104, which was added in 1994,[3] provides the burden of proof in a Prieur hearing "shall be identical to the burden of proof required by Federal Rules of Evidence Article IV, Rule 404." In Huddleston v. United States, 485 U.S. 681, 689, 108 S.Ct. 1496, 1501, 99 L.Ed.2d 771 (1988), the United States Supreme Court indicated with regard to Rule 404 that the required burden of proof is met if the fact-finder could reasonably conclude from the evidence that the defendant committed the act in question.
The effect of the repeal of article 1103 and the addition of article 1104 on the burden of proof required for the admission of other-crimes evidence has not been settled by this court.[4] However, we need not decide this issue in this case because the evidence at the Prieur hearing sufficiently met the higher burden of proof.
At the Prieur hearing, the parties submitted a transcript of the testimony Jerome Byrd gave at the hearing on the State's motion to transfer this case from juvenile court to district court. According to the transcript, Byrd testified he drove to a service station on the evening of September 17, 1994, to have a flat tire fixed. After returning to his car, he felt a gun placed to the back of his head. He was ordered to get out of his car, but before he had time to comply, the gunman began shooting. Byrd was hit in the arm. When he got out of the car, the gunman took a gold chain from him and stole *4 his car. Byrd indicated he had a good look at the perpetrator and identified defendant as that person. This testimony was sufficient to prove by clear and convincing evidence that defendant was the person who robbed and shot Byrd on September 17, 1994.
Further, evidence of the earlier shooting was relevant to prove absence of accident, as well as defendant's intent to shoot the victim without provocation. The assertion in defendant's statement to the police that the victim grabbed him by the arm, as well as questioning by defense counsel at trial regarding a knife found in the victim's van, raised the issue of whether defendant acted in self-defense or with provocation. In his brief to this court, defense counsel asserts "[a]n issue in this case was the ability of this fourteen year old to form the specific intent to kill or inflict great bodily harm." We find the other-crimes evidence was relevant to this material issue. Additionally, we believe the probative value of the evidence outweighed its prejudicial effect. Accordingly, the trial court did not err in allowing the other-crimes evidence to be admitted at trial or in denying defendant's motion for new trial.
These assignments of error are meritless.

Assignments of Error Nos. 3 and 5
Defendant asserts that because Children's Code article 857(B) "supplants the penalty provision of the second degree murder statute," the trial court should have granted his motion for a six-person jury (assignment of error number three) and his motion to quash (assignment of error number five). Children's Code article 857 provides as follows:
A. The court on its own motion or on motion of the district attorney may conduct a hearing to consider whether to transfer a child for prosecution to the appropriate court exercising criminal jurisdiction if a delinquency petition has been filed which alleges that a child who is fourteen years of age or older at the time of the commission of the alleged offense but is not otherwise subject to the original jurisdiction of a court exercising criminal jurisdiction has committed any one or more of the following crimes:
....
(2) Second degree murder.
....
B. Notwithstanding any other provision of law to the contrary, a fourteen-year-old who is transferred pursuant to this Article and subsequently convicted shall not be confined for such conviction beyond his thirty-first birthday. (Underscoring added.)
Defendant argues Children's Code article 857(B), as a specific provision dealing with fourteen year olds convicted of second-degree murder, must control over the general penalty provision of Louisiana Revised Statute 14:30.1. He further contends that, because Children's Code article 857(B) provides for punishment in excess of six months but does not specify the confinement be at hard labor, he was entitled to a six-person jury under Louisiana Code of Criminal Procedure article 782(A). Code of Criminal Procedure article 782(A) provides that cases in which the confinement "may" be confinement at hard labor shall be tried by a jury composed of six jurors, whereas a twelve-person jury is required when the confinement is necessarily at hard labor.
Defendant's motion to quash is based on the contention that article 857(B) is ambiguous and unconstitutionally vague on three grounds: (1) it provides for the same penalty regardless of whether defendant is convicted of second-degree murder or a responsive offense; (2) it does not specify the manner of incarceration (with or without hard labor); and (3) it permits imposition of an indeterminate sentence since it merely provides confinement shall not be "beyond" the offender's thirty-first birthday.
Upon denial of his motion to quash, defendant filed a writ application with this court. In State v. Wilkerson, 96-0333 (La.App. 1st Cir. 3/25/96) (unpublished), we denied the application with the following language:
WRIT DENIED. La. Ch. C. art. 857 does not replace the ordinary sentencing provisions as set forth in the Louisiana Criminal Code; it provides that a child tried as an adult for specific enumerated *5 offenses will not be confined for that offense beyond his thirty-first birthday.
The supreme court denied defendant's writ application seeking further review. State v. Wilkerson, 96-0853 (La.4/19/96), 671 So.2d 923.
Despite our earlier decision, this court is not precluded from further review of the issues raised by defendant. See State v. Humphrey, 412 So.2d 507, 512 (La.1981). However, upon consideration of defendant's arguments, we adhere to our original conclusion that article 857(B) does not replace the ordinary sentencing provisions of the Louisiana Criminal Code, particularly Revised Statute 14:30.1(B).
In State v. Maduell, 326 So.2d 820, 830 (La.1976), the Louisiana Supreme Court indicated when a general statute and a specific statute deal with the same subject, the two statutes should be harmonized whenever possible. Revised Statute 14:30.1(B) provides the penalty for second-degree murder is life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. Reading this provision together with article 857(B), it is clear the two provisions may be harmonized by reading article 857(B), not as a replacement of the former provision, but as a limitation upon it in certain situations involving fourteen-year-old offenders. In all other respects, the penalty provision of Revised Statute 14:30.1(B) is applicable. Therefore, defendant's arguments that article 857(B) is unconstitutionally vague because it does not provide for a determinate sentence or the manner of incarceration are meritless. In cases where article 857(B) is applicable, both the manner of punishment and the length of sentence are provided by the respective penalty provision for the offense of which a juvenile is convicted. Article 857(B) merely provides the limitation that, if the offender's sentence otherwise would extend beyond that date, he should not be confined beyond his thirty-first birthday. In such situations, the offender is to be confined until his thirty-first birthday.
Therefore, we find no error in the trial court's denial of defendant's request for a six-person jury and his motion to quash. These assignments of error are without merit.

Assignments of Error Nos. 6 and 7
In these assignments of error, defendant contends the trial court imposed an excessive sentence and erred in denying his motion to reconsider sentence. However, in his appellate brief, defendant does not assert any grounds in support of the excessive sentence claim. Rather, based on the contention that Children's Code article 857(B) is the applicable penalty provision, defendant argues the trial court sentenced him based on the mistaken belief that a life sentence was mandatory in this case. As an extension of this argument, he complains the trial court failed to state a factual basis for the sentence as required by Code of Criminal Procedure article 894.1(C) for a sentence that is not mandatory. Defendant also argues the sentence was defective because the trial court lacked authority under Children's Code article 857(B) to impose it without benefit of parole eligibility. Finally, he reiterates the arguments made in his motion to quash regarding the alleged ambiguity and vagueness of Children's Code article 857(B).
All of these arguments are based on defendant's contention that article 857(B) supplants Revised Statute 14:30.1(B) as the applicable sentencing provision in this case. Since we have already rejected this argument in connection with other assignments of error, we likewise reject it with respect to the present assignments.
Contrary to defendant's assertions, Revised Statute 14:30.1 and Children's Code article 857(B) are both applicable herein. Revised Statute 14:30.1(B) provides the mandatory penalty for committing second-degree murder is life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. State v. Huff, 27,212, p. 13 (La.App.2d Cir. 8/23/95), 660 So.2d 529, 536, writ denied, 96-0212 (La. 5/1/97), 693 So.2d 754. However, pursuant to Children's Code article 857(B), the life sentence was subject to the limitation defendant not be confined beyond his thirty-first birthday. The trial court properly imposed sentence in accordance with these provisions.
*6 Moreover, although defendant did not argue the excessiveness issue in his appellate brief, we note the sentence imposed does not appear to be apparently severe or disproportionate to the crime committed so as to shock our sense of justice. The contention that a mandatory life sentence for second-degree murder is a violation of the constitutional prohibition against excessive punishment has been repeatedly rejected, even when the offender is a juvenile. State v. Payne, 482 So.2d 178, 181 (La.App. 4th Cir.), writ denied, 487 So.2d 436 (La.1986). See State v. Lively, 457 So.2d 1236, 1238 (La.App. 1st Cir.1984). Furthermore, pursuant to Children's Code article 857(B), a substantial limitation was placed on the life sentence defendant received. Despite his youth, defendant has been adjudicated delinquent at least twice, based on the commission of several serious offenses, including sexual battery and aggravated assault. Following the first adjudication, he was given the benefit of a suspended commitment. However, while on probation for that offense, he committed several other offenses. Based on our review of the record and considering the circumstances of the offense, as well as defendant's prior juvenile record, the sentence imposed was not excessive.
These assignments of error are without merit.

Assignment of Error No. 8
Defendant argues the trial court erred in granting an order transferring this case from juvenile court to district court.
Children's Code article 857 authorizes the juvenile court to conduct a hearing to consider whether to transfer a child, fourteen years of age or older, to district court for prosecution when a delinquency petition is filed alleging the child has committed one of several enumerated offenses. The State filed such a motion in this case. At that time, defendant was alleged to have committed first-degree murder and armed robbery, both of which are enumerated in article 857(A). After conducting an extended hearing on the State's motion to transfer, the juvenile court granted the motion, with extensive reasons for judgment. The order of transfer terminated the jurisdiction of the juvenile court. See La. Ch.Code art. 863(A). Defendant filed a writ application seeking review of the transfer order, which was denied by this court. State ex rel. T.W., 95-1313 (La.App. 1st Cir. 7/27/95) (unpublished), writ denied, 95-2004 (La.9/1/95), 658 So.2d 1263.
Children's Code article 862(A) provides that, in order to obtain a transfer order, the State must establish: (1) the existence of probable cause that the offender committed one of the crimes enumerated in Children's Code article 857(A), and (2) proof by clear and convincing evidence that there is "no substantial opportunity for the child's rehabilitation through facilities available to the court." Defendant does not dispute the State met the first requirement. However, he alleges the State failed to meet the second requirement because the evidence revealed there was "still a substantial opportunity for his rehabilitation."
Article 862(A)(2) delineates the following criteria for determining whether a substantial opportunity for rehabilitating a child exists:
(a) The age, maturity, both mental and physical, and sophistication of the child.
(b) The nature and seriousness of the alleged offense to the community and whether the protection of the community requires transfer.
(c) The child's prior acts of delinquency, if any, and their nature and seriousness.
(d) Past efforts at rehabilitation and treatment, if any, and the child's response.
(e) Whether the child's behavior might be related to physical or mental problems.
(f) Techniques, programs, personnel, and facilities available to the juvenile court which might be competent to deal with the child's particular problems.
The determination of whether a youth is amenable to rehabilitation is a matter within the sound discretion of the juvenile court, which had the opportunity to hear the evidence and observe the juvenile. However, this discretion is limited in that it must reflect consideration of the factors outlined above. See State v. Everfield, 342 So.2d 648, *7 655-56 (La.1977). As a safeguard ensuring meaningful review, the juvenile court must state for the record its reasons for judgment. See La. Ch.Code art. 862(B); Everfield, 342 So.2d at 656.
Defendant argues his age (the youngest for which transfer is allowed under article 857(A)), his immaturity, and his lack of sophistication mitigate against transfer. In considering these factors, the juvenile court noted they were among the more "troubling aspects" of article 862(A)(2). The court further stated it was not certain what was meant by "sophistication." However, the court believed it was significant that, after shooting the victim in this case, defendant retrieved his gun and wiped the van for fingerprints, thereby demonstrating "the sophistication and mentality of an adult criminal." The court also noted defendant, who was physically the size of a normal fourteen-year-old, was "able to live on the streets" without the aid of an adult.
The next enumerated factor is the "nature and seriousness of the alleged offense" and "whether the protection of the community requires transfer." La. Ch.Code art. 862(A)(2)(b). Defendant argues this factor should be given little weight because transfers are always reserved for the most severe offenses. However, the inclusion of this factor in the criteria enumerated in article 862(A)(2) indicates it is a proper matter for the court's consideration. In this case, the court felt the extreme seriousness of the alleged offenses was a factor indicating transfer was appropriate for the protection of the community.
The nature and seriousness of defendant's prior acts of delinquency also indicated transfer. When he was ten years old, defendant was adjudicated delinquent for the offense of sexual battery. While still on supervised probation for that offense, he committed the offenses of aggravated assault, possession of a stolen vehicle and possession of a sawed-off shotgun. As a result, he was placed at Christian Acres, a residential-treatment facility for youths, where he received treatment from June 1993 until May 1994.
The child's response to past efforts at rehabilitation and treatment is a factor included in article 862(A)(2). With reference to this factor, defendant contends the progress he made while at Christian Acres demonstrates his amenability to rehabilitation. However, while acknowledging he made progress at Christian Acres, the juvenile court noted this progress did not last long once defendant was placed outside a controlled environment, i.e., one where he could make his own choices. The court specifically noted that defendant committed this offense within months of his release from Christian Acres, as well as that probable cause was established that he committed two other shootings in the same brief period following his release. The court found: "[E]ven though there has been some response to the past rehabilitation and treatment, ... it is not sufficient to believe ... Tyris would benefit from further treatment in a juvenile process."
Another relevant factor to be considered by the court is whether the child's behavior is related to any physical or mental problems. At the transfer hearing, there was expert testimony indicating defendant suffered from certain mental limitations. In its reasons for judgment, the court made the following observations regarding defendant's condition.
The testimony of the professionals was that Tyris has a personality disorder or a conduct disorder at this point.
....
The testimony is specific that Tyris has no neurological problem, no gross medical problems and no psychosis. There is some difference of opinion as to whether or not Tyris suffers from mild mental retardation or moderate mental retardation. The question is whether or not that mental handicap which Dr. Bergeron [an expert in child and adolescent psychiatry] indicates causes Tyris to be operating academically at least in a first to third grade level and probably the mental maturity of a six to eight year old in terms of his academic abilities, whether those limitations are such that ... Tyris should be continued in the juvenile system.
*8 There was also expert testimony that defendant's violent behavior was not attributable to his mental condition. While acknowledging his mental limitations, the court stated defendant "has chosen a course of action that involves getting guns ... and ... [using] them to shoot individuals."
The final factor listed in article 862(A)(2) is consideration of the techniques, programs, personnel and facilities available to the juvenile court which might be useful in dealing with the child's particular problems. At the transfer hearing, several witnesses testified as to the facilities and treatment available for juvenile offenders, as well as defendant's prognosis for treatment and rehabilitation. Defendant argues the Louisiana Training Institute, a juvenile facility, has programs to deal with violent offenders, as well as special-education programs for juveniles such as himself. However, after reviewing the evidence in its reasons for judgment, the juvenile court concluded: "I do not believe that the current techniques and facilities and programs available to Juvenile Court are competent to address the disorders and problems that Tyris has exhibited."
The juvenile court's extensive reasons for judgment clearly indicate it carefully considered the criteria specified in article 862(A)(2) in deciding whether to grant the State's motion to transfer. While the court noted the presence of some facts mitigating against transfer, considering the overall circumstances, it concluded the State had proven the requirements of article 862(A) by clear and convincing evidence. Based on our review of the record in light of the court's reasons for judgment, we cannot say the juvenile court abused its discretion in granting the transfer order.
This assignment of error is without merit.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] Defendant's first name is spelled "Tyrus" in some places in the record.
[2] La. Acts 1995, No. 1300, § 2.
[3] La. Acts 1994, 3d Ex.Sess. No. 51, § 2.
[4] Both the third and fourth circuits have concluded the repeal of article 1103 and the addition of article 1104 have resulted in a burden of proof less than clear and convincing evidence being required for the admission of other-crimes evidence. See State v. Langley, 95-2029, p. 5 (La. App. 4th Cir. 9/4/96), 680 So.2d 717, 720-21, writ denied, 96-2357 (La.2/7/97), 688 So.2d 498; State v. Crawford, 95-1352, pp. 16-19 (La.App. 3d Cir. 4/3/96), 672 So.2d 197, 207-08, writ denied, 96-1126 (La.10/4/96), 679 So.2d 1379.