745 So.2d 784 (1999)
STATE of Louisiana, Appellee,
v.
William PLAISANCE, Appellant.
No. 32,489-KA.
Court of Appeal of Louisiana, Second Circuit.
October 27, 1999.
Rehearing Denied December 2, 1999.
*785 William B. King, Shreveport, Counsel for Appellant.
Richard Ieyoub Attorney General, Paul J. Carmouche, Dist. Atty., Catherine M. Estopinal, Asst. Dist. Atty., Counsel for Appellee.
Before WILLIAMS, STEWART and DREW, JJ.
*786 STEWART, J.
The defendant, William Plaisance, was charged by an indictment with second degree murder under La. R.S. 14:30.1. The defendant elected a trial by jury. On October 10, 1998, the jury returned a verdict of guilty. The defendant was sentenced to life imprisonment without benefit of probation, parole or suspension of sentence. The defendant now appeals, urging three assignments of error. We hereby affirm the conviction and sentence.

FACTS
In the early morning hours of May 9, 1997, the defendant, William Plaisance, was driving north on North Market Street in his tan Toyota truck. Michael Kolo was traveling in the same direction on North Market Street in a dark Toyota Tercel. The defendant contends that the victim was tailgaiting him and bumped the rear of his truck. He continued and was rammed again by the victim from the rear. The defendant argues that he then exited the truck with a flashlight in his left hand and a pistol in his right with the intention of questioning why the other driver had bumped him. He walked toward the driver's side window of the car and the driver opened fire on him. In response, he fired his pistol into the driver's side window. After unloading his pistol, he "duck walked" underneath the driver's side window to the rear of the car where he obtained the license plate number. He walked back around the right hand side of the car, got into his truck and drove to the home of his friend, James Scaife, with whom he was visiting for the weekend. The defendant asked Scaife to take him to the hospital. The defendant told Scaife that he had been shot, and, when the defendant lifted up his shirt to show Scaife a wound, a .45 bullet fell out.
An autopsy revealed that Kolo received a number of wounds, including a fatal gunshot wound to the left side of his chest. The defendant was arrested and charged with second degree murder.

DISCUSSION

Insufficient Evidence
In his first assignment of error, the defendant contends that the jury erred in rendering a guilty verdict due to insufficient evidence presented by the State. There is no question of identity in this case. The defendant does not deny that he killed Michael Kolo. The defendant contends that he killed Kolo in self-defense. In State v. Hearold, 603 So.2d 731 (La. 1992), the Louisiana Supreme Court stated that when issues of both sufficiency of the evidence and trial errors are raised on appeal, the reviewing court should first determine the sufficiency of the evidence. The proper standard for appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.), writ denied, 605 So.2d 1089 (1992).
The evidence produced at trial viewed in the light most favorable to the prosecution establishes beyond a reasonable doubt that the defendant committed second degree murder. The defendant did not kill in self defense.
La. R.S. 14:30.1 provides in part:
A. Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm;
Also pertinent to the defendant's claim of self defense is La. R.S. 14:21 which provides:
A person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows *787 or should know that he desires to withdraw and discontinue the conflict.
The defendant's version of events directly contradicts the eyewitness testimony of David Gardner. Furthermore, Kevin Batts, an expert witness, and Officer Paul Robinson, the officer on-duty the night of the incident, both testified that the defendant's story was inconsistent with the physical evidence.
David Gardner, a newspaper carrier, testified that in the early morning of May 9, 1997 he was at a newspaper drop site located near Channel Six on North Market Street. Gardner noticed that there were two vehicles traveling north on North Market Street very close to each other at approximately 5 mph. The Toyota Tercel was traveling behind the yellow or tan pick up truck that sat high off the ground.
Gardner noticed that the vehicles stopped in the lane of traffic in front of Channel Six and the driver of the truck got out. The defendant walked to the driver of the car and made a statement of a sentence or so. Gardner heard the defendant say something about "follow him" in a voice that was not loud. The driver of the car said one word. The driver of the truck walked back to his truck and slowly retrieved something from his cab. The defendant returned to the car, went to the rear of the Tercel, and began shooting. After the defendant fired, Gardner heard another kind of shot. The two types of sounds were a louder shot and a muffled shot. Gardner observed the defendant walk around the Tercel shooting and stop at the front of the car.
The defendant then walked back to the driver's side window of the Tercel and said to the victim, "Why don't you call 911, motherfucker?" Then, the defendant began to walk slowly back to his truck.
As the defendant was walking back to his truck, the car rolled underneath the back of the truck. The defendant briefly paused, watched the car roll underneath the truck, got into his truck, sat there for 30-45 seconds and drove off.
Gardner testified that he walked to a nearby Exxon station to call the police. Gardner remained and gave a statement to the police.
Kevin Batts, a forensic chemist with training in accident reconstruction, recovered a small amount of paint from underneath the hitch of the defendant's truck. He also retrieved a paint sample from the victim's car. He concluded that the paint samples were from the same source.
There was a bullet hole in the same area as some gouges in the bare metal on the car. Based on his observation of the damage to the car and his expertise, Batts concluded that the bullet damage occurred before the impact damage. He also concluded from the physical evidence that the collision between the truck and car was a low speed collision.
Officer Paul Robinson testified that the defendant's version of events was inconsistent with the physical evidence. The bullet hole damage to the rear of the vehicle, the damage to the right rear panel, and bullet holes in the windshield all are unexplained inconsistencies with the defendant's explanation.
It is not the function of the court of appeals to evaluate the credibility of the witnesses. State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984), citing, State v. Richardson, 425 So.2d 1228 (La.1983). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347; State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir.1986), writ denied, 499 So.2d 83 (1987). The factual determination concerning conflicting testimony will not be disturbed on review unless it is clearly contrary to the evidence. State v. Mussall, 523 So.2d 1305 (La.1988); State v. Taylor, 621 So.2d 141 (La.App.2d Cir.1993).
*788 The defendant did not take the stand but his statement was admitted at trial. After hearing the testimony presented, the jury obviously rejected the defendant's claim of self-defense and chose to believe the eyewitness' testimony and the expert witness' testimony over that of the defendant. Even though the defendant's statement was in conflict with the eyewitness' testimony and expert witnesses' testimony, there was sufficient evidence to convict him. We find that the evidence produced at trial viewed in the light most favorable to the prosecution establishes beyond a reasonable doubt that the defendant committed second degree murder. The defendant did not kill in self defense. This assignment of error lacks merit.

Admission of Other Crimes Evidence
In his second assignment of error, the defendant contends that the trial court erred by granting the States' introduction of Art. 404(B) evidence. The defendant contends that the testimony offered concerning the defendant's reckless driving should not have been admitted. The defendant proposes that the evidence was not evidence of opportunity, preparation, plan, knowledge or identity. He also asserts that the evidence did not demonstrate absence of mistake or accident because the defendant never claimed the shooting was a mistake or accident.
La. C.E. art. 404(B) provides in part:
(1) ... evidence of other crimes or wrong acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, plan, knowledge, identity, absence of mistake or accident.
The defendant's assertion that there was no need for the state to demonstrate absence of mistake or accident is incorrect. The state always bears the burden of proving the defendant had a specific intent to kill. State v. Arnold, 30,282 (La. App.2d Cir.1/21/98), 706 So.2d 578; State v. Wilkerson, 96-1965 (La.App. 1st Cir. 11/07/97), 704 So.2d 1.
The State alleged that the defendant engaged in other instances of "road rage." As such, the State claimed that these instances were admissible to disprove the defendant's claim that Kolo was the aggressor, and to show intent, motive, knowledge and lack of accident or mistake. First, the State presented evidence supporting their claim that in January of 1996, in Texarkana where an officer was working an accident, a citizen reported to the officer that he had just been run off the road and identified the defendant's truck as the truck that committed the act. The State also noted that on July 14, 1997, the defendant allegedly harassed another vehicle while on the road. This incident was also reported to the police. After police questioned the defendant regarding the incident, the defendant was allegedly so agitated that he caused one witness to fear retaliation. Furthermore, immediately after killing Michael Kolo the defendant said to the man he had just killed, "Why don't you call 911, motherfucker?" The similar act evidence combined with the defendant's statement concerning calling 911 helped to establish intent and lack of accident and mistake.
In State v. Eisbruckner, 96-252 (La.App. 5th Cir. 1/15/97), 688 So.2d 39, writ denied, 97-0429 (La.9/5/97), 700 So.2d 502, evidence of defendant's inclination to set things on fire when upset was admitted to show that he intended to set fire to the victim's home in a second degree murder case. In State v. Driggers, 554 So.2d 720 (La.App.2d Cir.1989), prior acts with juveniles were admitted to show the instant offense was not accidental and to establish defendant's lustful disposition.
A trial court's ruling on admissibility of other crimes will not be overturned absent an abuse of discretion. State v. Butler, 30,798 (La.App.2d Cir.1998), 714 So.2d 877, citing, State v. Blackwell, 30,281 (La.App.2d Cir.11/10/97), 701 So.2d 1389, writ denied, 97-3073 (La.2/13/98), 709 *789 So.2d 755. We find no abuse of discretion, and we affirm the trial court's admission of other crimes evidence.
Finally, even if there was an abuse of discretion, the admission appears to be harmless. The erroneous introduction of other crimes evidence is subject to harmless error analysis. State v. Wafer, 31,078 (La.App.2d Cir.9/23/98), 719 So.2d 156, citing, State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94, reconsideration denied, 94-1379 (La.4/8/96), 671 So.2d 332. In light of the overwhelming evidence of the defendant's guilt, even if the admission of the other incidents was error it was harmless. This assignment of error lacks merit.

Failure to Sustain Objection to Closing Argument Statements
In his third assignment of error, the defendant contends that the trial court erred by not sustaining the defense's objection to comments by the assistant district attorney in closing argument. The defendant claims that there were two improper comments made by the state that require reversal. The defendant first contends that the state improperly commented on his failure to testify.
The assistant district attorney argued in closing:
Please pay attention to the significant facts in Mr. Gardner's testimony. Ask yourself whether somebody could forget the physical things that are important, physically walking around the vehicle, whether he is confused about the color of the vehicle or exactly where the defendant was when the shots started is a completely different thing. Common sense is all we ask. You don't hear him criticizing the important parts because if they bring them up, they know you will hang their client.
Mr. Pollards' testimony about their defendant swerving and cutting them off, did you hear any explanation? No.
The defendant urges that the comment concerning no explanation for Mr. Pollard's testimony was an impermissible comment on the defendant's failure to testify. At most, the statement in question appears to be an indirect reference to the defendant's failure to testify. For a mistrial to be mandated the alleged indirect reference must be intended to draw the jury's attention to the defendant's failure to testify or present evidence on his own behalf. State v. Johnson, 541 So.2d 818 (La.1989); State v. Smith, 433 So.2d 688 (La.1983). Mistrial is a drastic measure to be granted only when the prejudice resulting from in-court conduct deprives the defendant of any reasonable expectation of a fair trial. State v. Baker 28,152 (La.App.2d Cir.5/8/96), 674 So.2d 1108 citing State v. Smith, supra.
The defendant cites State v. Fullilove, 389 So.2d 1282 (La.1980) in support of his argument for a mistrial based on the State's comment about the defendant's failure to testify. The case does stand for that proposition but is factually much different than the present case. In Fullilove, the prosecutor said:
That is why the evidence was not introduced. The State's case is clear and simple. I really cannot add any more. The only thing that I would like to tell you is that at every phase of these proceedings, this man has been afforded his constitutional right. He has been afforded the right not to take the stand.
Due to this comment, the Supreme Court held that a mistrial should have been granted. Therefore, the Court reversed and remanded the case for a new trial.
Fullilove involved a direct comment concerning the defendant's failure to take the stand. This case involves no such comment. The statement in this case was merely a reference to the fact that there was no evidence to contradict Mr. Pollard's testimony. The remark was not made to draw attention to the fact that the defendant *790 did not testify. Therefore, we find that a mistrial was not warranted.
Next, the defendant contends that the district attorney improperly referred to his personal belief in the defendant's guilt. In its closing argument, the State commented:
And no, every death does not result in all of us being here. It doesn't. See not all killings are murder. If it's found to be a justifiable homicide by the police or the D.A.'s office then it doesn't get here. It only gets here if the case is presented to grand jury and the person is indicted for murder and brought to trial.
The State contends that this comment was in response to the defendant's closing argument which included the following statement:
It doesn't take much to accuse someone of a crime. Any time someone dies, somebody is going to be accused of killing them. Somebody is going to be accused of murder.
The defendant relies on State v. Kaufman, 304 So.2d 300 (La.1974), cert denied, 429 U.S. 981, 97 S.Ct. 495, 50 L.Ed.2d 591 (1976), where the court held that a prosecutor's expression of personal belief in the defendant's guilt constituted reversible error. The prosecutor in Kaufman stated:
Gentlemen, my argument, when I speak in a personal way, my argument is based on the evidence, and believe me, that's right, I personally feel from the evidence that I have a case; otherwise, I would not be here, because it's within my power to be here or not be here.
The State's comments in the instant case are not nearly as clear and direct an expression of personal opinion as those in Kaufman, supra. Also in the present case, considering that the State's comments were made to rebut the defense argument that every killing results in someone being accused of murder, the State's remark could be interpreted as an explanation of the criminal process as much as an expression of the prosecutor's personal belief in the defendant's guilt. In fact, the prosecutor did not say he believed the defendant to be guilty.
Analogous to the present case, in State v. Wiley, 513 So.2d 849 (La.App. 2d Cir. 1987), in which the prosecutor said, "This is the best fingerprint case I have ever had." The court held:
A resort to personal experience goes beyond the proper scope of argument, but a verdict will not be overturned on the basis of improper argument unless the reviewer is thoroughly convinced that the remarks influenced the jury and contributed to the verdict. State v. Brown, 395 So.2d 1301 (La.1981); State v. Minnifield, 475 So.2d 108 (La.App. 2d Cir.1985).
See also State v. Hattaway, 28,060 (La. App.2d Cir.5/8/96), 674 So.2d 380, in which the court recognized the prosecutor's comments were made to rebut the defendant's arguments and found no reversible error.
Here, we find that the State's comments in closing were not an expression of personal belief but rather an explanation of the prosecutorial process offered to rebut the defense's argument. Even if we were to consider the comment in question as an expression of personal belief in the defendant's guilt, it was an isolated comment that would not have influenced the jury's verdict. The defense argument is without merit.

CONCLUSION
For the reasons discussed, we hereby affirm the defendant's conviction and sentence.
AFFIRMED.

APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, STEWART, CARAWAY, and DREW, JJ.
Rehearing Denied.